### Boom Company *v.* Patterson.

1. The United States cannot interfere with the exercise by the State of her right of eminent domain in taking for public use land, within her limits, which is private property. But when the inquiry whether the conditions prescribed by her statutes for its exercise have been observed takes the form of a judicial proceeding between the owner of lands and a corporation seeking to condemn and appropriate them, the controversy is subject to the ordinary incidents of a civil suit, and its determination does not derogate from the sovereignty of the State.

2. A controversy of this kind in Minnesota, when carried, under a law of the State, from the commissioners of appraisement to the State court, taking there the form of a suit at law, may, if it is between citizens of different States, be removed to a Federal court.

3. In determining the value of lands appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the inquiry in such cases being, what, from their availability for valuable uses, are they worth in the market.

4. As a general rule, compensation to the owner is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.

5. On the upper Mississippi, where sending logs down the river is a regular business, the adaptability of islands to form, in connection with the bank of the river, a boom of large dimensions to hold logs in safety is a proper element for consideration in estimating the value of the lands on the islands when appropriated for public uses.

ERROR to the Circuit Court of the United States for the District of Minnesota.

The plaintiff is a corporation created by the laws of Minnesota, known as the Mississippi and Rum River Boom Company, and the defendant is a citizen of the State of Illinois.

The facts are stated in the opinion of the court.

*Mr. William Lochren* for the plaintiff in error.
*Mr. Charles E. Flandrau* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The plaintiff in error is a corporation created under the laws of Minnesota to construct booms between certain designated points on the Mississippi and Rum Rivers in that State. It is authorized to enter upon and occupy any land necessary for properly conducting its business ; and, where such land is private property, to apply to the District Court of the county in which it is situated for the appointment of commissioners to appraise its value and take proceedings for its condemnation. It is unnecessary to state in detail the various steps required to obtain the condemnation. It is sufficient to observe that the law is framed so as to give proper notice to the owners of the land, and secure a fair appraisement of its value. If the award of the commissioners should not be satisfactory to the company, or to any one claiming an interest in the land, an appeal may be taken to the District Court, where it is to be entered by the clerk " as a case upon the docket " of the court, the persons claiming an interest in the land being designated as plaintiffs, and the company seeking its condemnation as defendant. The court is then required to " proceed to hear and determine such case in the same manner that other cases are heard and determined in said court." Issues of fact arising therein are to be tried by a jury, unless a jury be waived. The value of the land being assessed by the jury or the court, as the case may be, the amount of the assessment is to be entered as a judgment against the company, which is subject to review by the Supreme Court of the State on a writ of error.

The defendant in error, Patterson, was the owner in fee of an entire island and parts of two other islands in the Mississippi River above the Falls of St. Anthony, in the county of Anoka,

in Minnesota.   These islands formed a line of shore, with occasional breaks, for nearly a mile parallel with the west bank of the river, and distant from it about one-eighth of a mile. The land owned by him amounted to a little over thirty-four acres, and embraced the entire line of shore of the three islands, with the exception of about three rods.   The position of the islands specially fitted them, in connection with the west bank of the river, to form a boom of extensive dimensions, capable of holding with safety from twenty to thirty millions of feet of logs.   All that was required to form a boom a mile in length and one-eighth of a mile in width was to connect the islands with each other, and the lower end of the island farthest down the river with the west bank; and this connection could be readily made by boom sticks and piers.

The land on these islands owned by the defendant in error the company sought to condemn for its uses; and upon its application commissioners were appointed by the District Court to appraise its value.   They awarded to the owner the sum of $3,000.   The company and the owner both appealed from this award.   When the case was brought before the District Court, the owner, Patterson, who was a citizen of the State of Illinois, applied for and obtained its removal to the Circuit Court of the United States, where it was tried.   The jury found a general verdict assessing the value of the land at $9,358.33, but accompanied it with a special verdict assessing its value aside from any consideration of its value for boom purposes at $300, and, in view of its adaptability for those purposes, a further and additional value of $9,058.33.   The company moved for a new trial, and the court granted the motion, unless the owner would elect to reduce the verdict to $5,500.   The owner made this election, and judgment was thereupon entered in his favor for the reduced amount.   To review this judgment the company has brought the case here on a writ of error.

The only question on which there was any contention in the Circuit Court was as to the amount of compensation the owner of the land was entitled to receive, and the principle upon which the compensation was to be estimated.   But the company now raise a further question as to the jurisdiction of the

Circuit Court.  Objections to the jurisdiction of the court below, when they go to the subject-matter of the controversy and not to the form merely of its presentation or to the character of the relief prayed, may be taken at any time.  They are not waived because they were not made in the lower court.

The position of the company on this head of jurisdiction is this : that the proceeding to take private property for public use is an exercise by the State of its sovereign right of eminent domain, and with its exercise the United States, a separate sovereignty, has no right to interfere by any of its departments.  This position is undoubtedly a sound one, so far as the act of appropriating the property is concerned.  The right of eminent domain, that is, the right to take private property for public uses, appertains to every independent government.  It requires no constitutional recognition ; it is an attribute of sovereignty.  The clause found in the Constitutions of the several States providing for just compensation for property taken is a mere limitation upon the exercise of the right.  When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.  The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested.  But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance.  If that inquiry take the form of a proceeding before the courts between parties, — the owners of the land on the one side, and the company seeking the appropriation on the other, — there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State.

The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of those terms.  But when it was transferred to the District Court by appeal from the award of the commissioners, it took, under the statute of the State, the form of a suit at

law, and was thenceforth subject to its ordinary rules and incidents. The point in issue was the compensation to be made to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the District Court. *Turner* v. *Halloran*, 11 Minn. 253. The case would have been in no essential particular different had the State authorized the company by statute to appropriate the particular property in question, and the owners to bring suit against the company in the courts of law for its value. That a suit of that kind could be transferred from the State to the Federal court, if the controversy were between the company and a citizen of another State, cannot be doubted. And we perceive no reason against the transfer of the pending case that might not be offered against the transfer of the case supposed.

The act of March 3, 1875, provides that any suit of a civil nature, at law or in equity, pending or brought in a State court, in which there is a controversy between citizens of different States, may be removed by either party into the Circuit Court of the United States for the proper district; and it has long been settled that a corporation will be treated, where contracts or rights of property are to be enforced by or against it, as a citizen of the State under the laws of which it is created, within the clause of the Constitution extending the judicial power of the United States to controversies between citizens of different States. *Paul* v. *Virginia*, 8 Wall. 177. And in *Gaines* v. *Fuentes* (92 U. S. 20), it was held that a controversy between citizens is involved in a suit whenever any property or claim of the parties, capable of pecuniary estimation, is the subject of litigation and is presented by the pleadings for judicial determination. Within the meaning of these decisions, we think the case at bar was properly transferred to the Circuit Court, and that it had jurisdiction to determine the controversy.

Upon the question litigated in the court below, the compensation which the owner of the land condemned was entitled to receive, and the principle upon which the compensation should be estimated, there is less difficulty. In determining the value of land appropriated for public purposes, the same considera-

tions are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated.

So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.

The position of the three islands in the Mississippi fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, added largely to the value of the lands. The boom company would greatly prefer them to more valuable agricultural lands, or to lands situated elsewhere on the river; as, by utilizing them in the manner proposed, they would save heavy expenditures of money in constructing a boom of equal capacity. Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of his lands.

We do not understand that all persons, except the plaintiff in error, were precluded from availing themselves of these lands for the construction of a boom, either on their own account or for general use. The clause in its charter authorizing and requiring it to receive and take the entire control and management of all logs and timber to be conveyed to any point

on the Mississippi River must be held to apply to the logs and timber of parties consenting to such control and management, not to logs and timber of parties choosing to keep the control and management of them in their own hands.   The Mississippi is a navigable river above the Falls of St. Anthony, and the State could not confer an exclusive use of its waters, or exclusive control and management of logs floating on it, against the consent of their owners.   Whilst in *Atlee* v. *Packet Company* (21 Wall. 389) we held that a pier obstructing navigation, erected in the river as part of a boom, without license or authority of any kind except such as arises from the ownership of the adjacent shore, was an unlawful structure, we did not mean to intimate that the owner of land on the Mississippi could not have a boom adjoining it for the reception of logs of his own or of others, if he did not thereby impede the free navigation of the stream.   Aside from this, we do not think that the State is precluded by any thing in the charter of the company from giving a license to the defendant in error to construct a boom near his lands.   Moreover, the United States, having paramount control over the river, may grant such license if the State should refuse one.   The adaptability of the lands for the purpose of a boom was, therefore, a proper element for consideration in estimating the value of the lands condemned.   The contention on the part of the plaintiff in error is, that such adaptability should not be considered, assuming that this adaptability could never be made available by other persons, by reason of its supposed exclusive privileges ; in other words, that by the grant of exclusive privileges to the company the owner is deprived of the value which the lands, by their adaptability for boom purposes, previously possessed, and therefore should not now receive any thing from the company on account of such adaptability upon a condemnation of the lands.   We do not think that the owner, by the charter of the company, lost this element of value in his property.

The views we have expressed as to the justness of considering the peculiar fitness of the lands for particular purposes as an element in estimating their value find support in the several cases cited by counsel.   Thus, *In the Matter of Furman Street* (17 Wend. 669), where a lot upon which the owner had his resi-

dence was injured by cutting down an embankment in opening a street in the city of Brooklyn, the Supreme Court of New York said that neither the purpose to which the property was applied, nor the intention of the owner in relation to its future enjoyment, was a matter of much importance in determining the compensation to be made to him ; but that the proper inquiry was, " What is the value of the property for the most advantageous uses to which it may be applied ? " In *Goodwin* v. *Cincinnati & Whitewater Canal Co.* (18 Ohio St. 169), where a railroad company sought to appropriate the bed of a canal for its track, the Supreme Court of Ohio held that the rule of valuation was what the interest of the canal company was worth, not for canal purposes or for any other particular use, but generally for any and all uses for which it might be suitable. And in *Young* v. *Harrison* (17 Ga. 30), where land necessary for an abutment of a bridge was appropriated, the Supreme Court of Georgia held that its value was not to be restricted to its agricultural or productive capacities, but that inquiry might be made as to all purposes to which it could be applied, having reference to existing and prospective wants of the community. Its value as a bridge site was, therefore, allowed in the estimate of compensation to be awarded to the owner.

These views dispose of the principle upon which the several exceptions by the plaintiff in error to the rulings of the court below in giving and in refusing instructions to the jury were taken, and we do not deem it important, therefore, to comment upon them.

*Judgment affirmed.*