AMOSKEAG MANUFACTURING CO. v. WORCESTER & a.

*Amoskeag Co.* v. *Head*, 56 N. H. 386, affirmed.

A mill-owner, who by means of a dam takes land by flowage for the use of his mill, under G. L., c 141, s. 15, may erect a dam of sufficient height for a reservoir of sufficient capacity to supply other mills than his own with water-power.

When the dam is constructed with flash-boards, to be used in time of low water, they constitute a part of the dam, and the top of the flash-boards is the line which measures the height of the flowage.

In the trial of the question whether the taking of land by flowage for mill purposes is for a public use and benefit, and of the question of damages, the exclusion of evidence of the mill-owner's net profits, divided and accumulated, for a series of years, and of the amount of surplus earnings expended in permanent structures, and of the sums paid to others for the right of flowing land upon the same reservoir, is not legal error.

The admissibility of evidence of the amount of salary paid by one of the parties to an employé, as affecting his credibility as a witness, is a question of fact to be determined at the trial.

In determining the value of lands appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the inquiry in such cases being, What, from their availability for valuable uses, are they worth in the market ?

As a general rule, compensation to the owner is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.

Evidence of the non-residence of stockholders and officers of the domestic corporation, by which the land is taken, is immaterial.

PETITION, for the assessment of damages under the flowage act of 1868, G. L., c. 141, ss. 15, 16, 17.

*C. R. Morrison*, for the defendants.

*Mugridge* and *Cross*, for the plaintiffs.

ALLEN, J. The defendants demurred to the petition upon the ground of the unconstitutionality of the statute upon which it is brought, and excepted to the overruling of the demurrer. At the trial they also excepted to the refusal to instruct the jury that the taking of the defendants' land by the plaintiffs for the use of their mills was in violation of the fourteenth amendment of the federal constitution. These questions were decided in *Amoskeag Manufacturing Co.* v. *Head*, 56 N. H. 386.

It appeared in evidence that more than one half the water from the plaintiffs' mill-pond is used by other corporations and companies, who pay rent to the plaintiffs for its use. The defendants excepted to the refusal to instruct the jury that the statute does not authorize the flowing of land for the benefit of other persons and corporations not erecting and maintaining the dam, and that the plaintiffs could not lawfully raise the dam higher than might

be sufficient for obtaining water for the use of their own mills. The statute provides for the erection of a dam by any person or corporation having a mill on his own land, or land of another with his consent, or for creating a reservoir for "its use and of mills below." The language is too plain to admit of any question of construction. After providing for the necessities of the mill or mills belonging to the person or corporation making the improvements, the legislature, by adding the words "and of mills below," made provision for other mills that might be accommodated with water-power by the same dam.

The flowing of the defendants' land was by means of a dam built two feet higher than the old one in its place, with flash-boards two feet high used in the dry season, and so placed as to be carried away by high water. The defendants claimed that their land could only be taken by a dam, and excepted to the instruction that the flash-boards, as used, were to be considered a part of the dam. The instruction in effect was, that the top of the flash-boards was the height to which the dam was raised. It was necessary that some definite point or line beyond which the plaintiffs could not raise the water by the dam should be fixed, and the dam with the flash-boards added was the measure of the height to which the plaintiffs might raise the water. *Town* v. *Faulkner*, 56 N. H. 255. It is not the case of an assessment of damages for flowing to a line of equal height with the top of the dam, and then claiming the right to add flash-boards without paying additional damages. The defendants' damage for all the flowage occasioned by the dam with flash-boards is adjusted by treating the flash-boards as a part of the dam, and they cannot complain if the dam is reduced in height by the absence of flash-boards a part of the time.

The pond and back-water caused by the plaintiffs' dam and flash-boards extend eight miles, from Manchester to Hooksett falls, and the defendants' land forms a part of the embankment and bed of the river. The defendants claimed that their land was of great value by reason of its relation to the whole water-power; and, as evidence of the value of the whole right of flowage and appropriation of land, they offered to show the plaintiffs' dividends from the beginning of the corporation to the present time, their accumulated net earnings, the market value of their stock, and how much of their surplus earnings over dividends they had expected in the erection of the dam, and of mills, bridges, and other structures. The defendants also offered to show, as evidence of the value of their land taken, the sums paid by the plaintiffs for the rights to flow many other persons' lands situated upon the same pond. The defendants excepted to the exclusion of all this evidence. It is not made apparent how the receipts and expenditures of the plaintiffs could affect the questions at issue. The fact that dividends were paid by the corporation and that surplus profits had accumulated, would tend to show the prosperous character of the corpora-

tion and the good management of its business. How it would show the amount of damage to land taken by flowage, or that the operations of the plaintiffs were not of public utility, it is difficult to see. If the plaintiffs had never made a dividend or earned anything, the defendants would not have regarded that fact as evidence of the market value of their land. It does not appear how the amount of damage hereafter done them by flowing their land will depend upon the past or present prosperity or bankruptcy of the plaintiffs. The bearing of the whole value of the plaintiffs' property and improvements upon the question of the value of a single element, like the right of flowing the defendants' land, might be so remote as to mislead or not aid the jury in seeking a correct conclusion. *State* v. *Havey*, 58 N. H. 377 ; *State* v. *Railroad*, 58 N. H. 410 ; *Amoskeag Co.* v. *Head*, 59 N. H. 332, 337. So, too, in the exclusion of the evidence of what the plaintiffs paid for the right to flow others' lands upon the same reservoir, there was no legal error. Ordinarily, when the value of property is in question, the amount paid for similar property in the vicinity and at a period not too remote is admissible in evidence. *Thornton* v. *Campton*, 18 N. H. 20 ; *March* v. *Railroad*, 19 N. H. 372 ; *Concord Railroad* v. *Greely*, 23 N. H. 238, 242 ; *Hoit* v. *Russell*, 56 N. H. 559. The competency of the rejected evidence depended, among other circumstances, upon the similarity in locality, extent, and value of the rights acquired, with the right sought to be obtained in this suit. Whether it was practicable, within the reasonable limits set to the trial, to try all the collateral questions that would be raised in so many cases as were included in the evidence offered, and whether the just rights of the parties required so laborious and expensive an undertaking, were questions of fact to be determined at the trial term. *Amoskeag Co.* v. *Head, supra.*

Upon cross-examination of a witness, an employé of the plaintiffs, the exclusion of the defendants' inquiry of the amount of the witness's salary was excepted to. The employment of the witness was evidence on the question of his interest ; but whether time should be spent in investigating the wages of the witnesses on the question of their interest in the cause on trial, was a question of fact to be determined at the trial. *Merrill* v. *Perkins*, 59 N. H. 343 ; *Perkins* v. *Towle*, 59 N. H. 583.

The defendants' request for an instruction (which was refused) that a riparian proprietor is liable for changing the level of the water on the land of the owner above, was a claim that the statute under which the petition is brought gave the plaintiffs no right to take the land by flowage. The case is not one brought to determine the question of the plaintiffs' liability for a wrongful taking of land by flowage, but for an assessment of damages under the flowage act ; and the doctrine of the request is not applicable.

The defendants excepted to the instructions that the jury, in assessing the damages, were to decide how much the market value

of the defendants' land had been lessened by the dam and flash-boards; and in determining this, they should consider the value of the land in all its parts and elements, its capabilities for agricultural, manufacturing, or any other purposes for which it was adapted or likely to be used, and all its relations to the whole water-power. In *Boom Co.* v. *Patterson*, 98 U. S. 407, 408, Mr. Justice *Field* giving the opinion, said,—"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, What is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is adapted?—that is to say, what is it worth from its availability for valuable uses?" The instructions given in this case were not different in principle from the doctrine of *Boom Co.* v. *Patterson*.

On the question of public use and benefit, the defendants offered to prove that nearly all the capital stock of the plaintiff corporation was owned by residents of another state, and that the principal officers of the corporation resided out of the state. The non-residence of the stockholders and officers of this New Hampshire corporation does not tend to show that the use made of the water-power at Amoskeag falls is a private use as distinguished from a public use, and evidence that all the plaintiffs' stockholders and officers were residents of the state would not tend to show that the use of the water-power is public. If all the stockholders and principal officers of the Concord Railroad were residents of Europe, the use of the land taken for the highway operated by that company would not, on that account, be private. The benefit to the public arising from the development and improvement of water-power and the establishment of mills, through the promotion of industry and trade, and the supply of a near market for the natural, agricultural, and mechanical products of the state, is the same whether it comes from the investment of capital owned at home or abroad. The manufacturing establishments of New Hampshire have been largely built and operated by foreign capital, and the investment of such capital here has been considered a benefit to the state. The evidence offered was properly excluded.

*Judgment on the verdict.*

STANLEY, SMITH, CLARK, and BLODGETT, JJ., did not sit: the others concurred.