# SUPERIOR COURT OF BALTIMORE CITY

### INQUISITION.

Filed March 27, 1890.

BALTIMORE & OHIO RAILROAD COMPANY
VS.
SARAH JANE SMITH.

*W. Irvine Cross and George D. Penniman* for plaintiff.

*John Pentland Brown* and *Harry M. Benzinger* for defendants.

HARLAN, J.—

The exceptions to the confirmation of the inquisition in this case will be considered in the order in which they were presented by the counsel for the exceptants at the arguments.

1. That under course of condemnation for its own use, the B. & O. R. R. is attempting to acquire the land for another railroad, to wit: The Belt R. R. Co., and does not need the land for its own use. It is sufficient to say with reference to this exception that it fails upon the proof offered.

2. The second exception raises the question of the jurisdiction of this Court.

The power to acquire property by condemnation was conferred upon the B. & O. R. R. Co. by the Chartering Act of 1826, Ch. 123, which provides for the return of the inquisition to the clerk of the county Court. At that time Baltimore City was a part of Baltimore County, and the argument is that when Baltimore City was erected into a separate jurisdiction by the Constitution of '51, and judicial tribunals provided for the city, the organic law did not confer upon the clerk of any of these Courts the authority and power in these premises that had been theretofore exercised by the Clerk of the Baltimore County Court; and inasmuch as there is no officer to whom an inquisition made under the Act of 1826, Ch. 123, can be returned, the railroad company can no longer conduct condemnation proceedings under this Act, but must proceed in accordance with the general law for the

condemnation of property by corporations. In the creation of the several tribunals for the city, the manifest intent of the framers of the constitution was to distribute the jurisdiction that had been previously exercised within the same territorial limits by the Baltimore County Courts among the new tribunals, and the Court should, if possible, adopt a construction of the instrument that would leave no part of this field of jurisdiction unoccupied. The power of the Court may be sustained, it seems to me, by the 11th Section of Article IV, wherein the Superior Court is given jurisdiction "in all other civil cases not herein assigned to the Court of Common Pleas," more particularly in view of the fact that the 15th Section of the same Article gives to the Clerk of the Superior Court "the custody of all deeds, conveyances and other papers now remaining in the office of the Clerk of the Baltimore County Court," and provides that he shall "hereafter receive and record all deeds, conveyances and other papers required by law to be recorded," and that the 15th Section of the same Article declares that "the Clerks of the Court of Common Pleas, the Superior Court and the Criminal Court of Baltimore City, shall perform all the duties appertaining to their respective offices and heretofore vested in the Clerks of the Baltimore County Court and Baltimore City Courts respectively."

But whatever doubts may exist on this subject would seem to be removed by the Acts of 1866, Ch. 154, and 1884, Ch. 233, to which I have been referred since the argument.

3rd. That the Sheriff did not summon twenty persons to attend as jurors on the land to be condemned or near the same, but at the Sheriff's office which was a long distance away from said land.

The evidence shows that the summonses were in the usual form, commanding the attendance of the jurors on the land to be condemned at the time therein stated, but upon the bottom of the printed form of each summons appeared a request to the persons summoned to report at the Sheriff's office at an earlier hour. The Sheriff testifies that this has been the practice of his office for a long time in order to insure the prompt assembling of the jury at the appointed time, and inasmuch as there is nothing mandatory in the words, or contradictory of the terms of the summons, and nothing

was done towards selecting, from the persons summoned, the jurors, until they had proceeded to the land, I see nothing in this objection that requires the setting aside of the inquisition.

4th. That without waiting to go upon the land to be condemned, the Sheriff summoned one person in the place of one of the persons first summoned who had failed to appear at his office, and took the person so summoned with him to the land and used him as a juryman on the panel. It appears that the Sheriff was notified of the inability of one of the persons summoned to attend by reason of sickness, and being thus apprised, when he had arrived at the corner of Lee and Howard streets, within a short distance of the property to be condemned, he summoned L. H. Robinson as a juror and took him upon the land with the others and from the twenty jurors so brought the panel was selected. The contention of the exceptants is that the authority given by the Act must be strictly pursued, and that the Act gave the Sheriff no power to summon other jurors in the place of those failing to attend until he had gone upon the land and ascertained there the fact of such nonattendance. In the case of the Tide Water Canal Co. vs. Archer, 9 G. & J. 494, will be found the following significant language: "On motions for new trials, not only in civil but in criminal cases, and some of them even capital, where jurors have been improperly put in the jury box and have formed a portion of the panel which gave the verdict, the Courts have refused to set aside such verdict when there was no proof of fraud on the part of the summoning officer, nor of collusion with any other person, and the reason is that no injustice has been done to anybody, that being the subject of inquiry." And further on in the same case (page 497), in refusing to set aside an inquisition on the ground of the incompetency of certain jurors because related to the parties contrary to the express word of the Act, the Court says: "Now it is true that the statute we are considering, confers special powers and upon a new jurisdiction, and falls within a well established principle of law, that it must, in that behalf, be construed strictly—that these powers must be exercised according to the course prescribed by the statute. We do not think it at all conflicts with this principle, in overruling this objection, made

as it is at this late stage of the proceedings. We are clearly of opinion that should such an objection be sustained, if there would not be a failure of justice there would be so many difficulties and embarrassments growing out of it, as would nearly, if not altogether defeat the purposes of the Act of Assembly. By the provisions of the statute there is ample time allowed from the date of the warrant to the Sheriff who is directed forthwith to summon the jury, to every person having an interest in the controversy, to inform himself as to the requisite qualifications of all who are summoned as jurors, and there is no just reason, as we conceive, why a party should not avail himself of such objection by way of challenge before a juror is sworn, as he would undoubtedly be obliged to do, in the case of a common law jury. * * * It is the duty of the parties interested to make diligent inquiry as to the qualifications of jurors if they mean to except to their competency." Irregularities in summoning of particular jurors was ground of challenge to the polls at common law (Thompson on Trials, Section 38). and the principles announced by the Court in Tide Water Canal Co. vs. Archer, above set forth, seem to me entirely applicable to the present objection. For the reason, then, that no injustice seems to have resulted, and that it is made too late, this objection cannot be sustained.

5th. That the examination of the witnesses was conducted at a place far distant from the land, and the inquisition was there signed, and not on or near the land condemned. It appears that the exceptants made no objection to an adjournment to the place where the proceedings were conducted, after the premises had been viewed; that they appeared there and, by their counsel, took part in the hearing, examining and producing witnesses, and arguing the case, and they must, therefore, be regarded as having waived any right to object to the inquisition on this account. Lewis on Eminent Domain, Section 407.

6th. That by the inquisition, no damages are allowed to Mrs. Taylor for her dower interest. The right of the wife to be compensated for her inchoate dower where lands are condemned or dedicated for public purposes, has been the subject of adjudication in several cases. The author-

ities are collected in Stewart on Husband and Wife, Sec. 278, and the law as drawn therefrom is thus stated: "If the husband's property is taken by right of eminent domain dower is defeated and the husband's voluntary dedication thereof to public uses has the same effect."

In Mills on Eminent Domain the law is thus laid down, Section 71: "An inchoate right of dower may be taken during the lifetime of the husband on giving full compensation to the husband. The inchoate right of dower is not such an interest as is capable of assessment. During the life of the husband he represents the fee. It has been well held that when an estate is taken before the decease of the husband, the value of the widow's inchoate right of dower is deemed too uncertain to admit of compensation; that the husband must be regarded as the owner of the entire estate and that as such he is entitled to full compensation for it."

Scribner in his excellent work on Dower, in the chapter on "The nature and qualities of dower while the right is inchoate," in Vol. II, makes a very strong argument why the wife should be compensated for her inchoate dower as a valuable right which is in various ways recognized by the law; and Lewis in his Treatise on Eminent Domain, gives his sanction to the same view. But wherever the question has been directly before the Courts it has been held to the contrary, and even Scribner, in his first volume in the chapter on "Dower in Lands Appropriated to Public Uses," after reviewing several cases concludes (p. 582. Sec. 7), "The rule fairly deductible from these authorities would seem to exclude dower in all cases where lands are dedicated to the public for a legitimate purpose and the public have acquired the right to the enjoyment thereof, or where they are lawfully appropriated in virtue of the right of Eminent Domain." Our own Court of Appeals have declared in Buchanan vs. Deshon, 1 H. & Gill, 280, with reference to the wife's interest in her husband's real estate: "She has no vested right, it is altogether contingent, depending upon her surviving her husband." Again in Reiff vs. Horst, 55 Md. 47, "It is inchoate only during his life, it requires the husband's death to occur before it becomes a vested right. * * * It is not such a right as may be bargained and

sold. Her deed does not pass any title. It operates only by way of estoppel or release * * * She cannot convey it to a stranger * * * Regarding her right as the law does, during the husband's life, as having no present value as it is not the subject of sale, but only of release to the owner of the fee, we have no scale or standard for ascertaining its present worth."

In view of the weight of the authorities and these expressions of the Court of Appeals I am led to the conclusion that the inquisition ought not to be disturbed because the whole of the value of the rent incident to the reversion in fee was assessed to the husband.

7th. That the language in said inquisition "thus making the award to Sarah Jane Smith $10,652.18, was not part of the finding of the jury, but was inserted afterwards by the Sheriff at his office after the award had been signed by the jury and they had been discharged, and that without these words the award is so uncertain and indefinite that it should not be ratified.

The facts, as they are disclosed by the evidence, are that after the jury had signed and sealed the finding, there was some discussion among them with reference to its wording, and in consequence thereof Mr. Duehurst wrote out the words quoted above on a slip of paper. (He says it was done with the assent of all the jury who were present and that this assent was given by a vote, but this is not clear), and gave the slip to the Sheriff to make the insertion. This was not done by the Sheriff until he arrived at the office. It is very clear to me that nothing should be regarded as the inquisition of the jury except what was inserted in the finding in the presence of the jury and before they had been discharged. It must stand or fall as thus written and the jury cannot delegate authority to anyone to do that thereafter which they, under the statute, are required to complete. What effect then is to be given to this addition? If on examination it is found that in reality the added language does not change the award; that when disregarded the meaning remains the same and is not on a fair interpretation, indefinite and uncertain, then it seems to me the alteration is immaterial and should not be allowed to operate to the prejudice of parties not in any way responsible for it. When the whole inquisition taken without the added words is read through from the beginning and so construed, it is to my mind susceptible of but one meaning, and that is this: That the jury intended to award Mrs. Smith the sum of $11,000, less the sum of $342.82, which the parties had agreed was the value of Mr. Taylor's ground rent, to award to Mr. Taylor this sum of $342.82, and to each of the tenants the sums expressly mentioned. In other words Mrs. Smith is to receive $10,657.28 or exactly what the added words say is the award to her. This objection, therefore, should not, in my judgment, be allowed to prevail.

8th. That the damages awarded to Mrs. Smith are grossly inadequate.

There is no difficulty as to the rule by which the damages are to be estimated. It is the fair market value of the property, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted. Boon Co. vs. Patterson, 98 U. S., 407. The rule is not disputed, but it is contended that when measured by this standard the award of the jury is erroneous. The principles by which the Court should be guided in reviewing the action of the jury in the question of damages seem to be the same as in the case of verdicts of juries in common law suits. It is true that the case is tried *de novo*, and that the Court is not to determine whether the jury were right on the evidence submitted to them, but if on all the evidence produced to the Court, the verdict of the jury could be sustained, and the testimony is conflicting, the Court should not interfere; and especially is this the case where the jury have viewed the premises (Lewis on Eminent Domain, Sec. 524, and cases cited). I have carefully considered the evidence produced before me in this case, and while the expert witnesses for the company and those for the exceptants differ much as to the view of the property I cannot say that the preponderance of the evidence is so much in favor of the exceptants that if it were before another jury the latter could not properly reach the same conclusion as was arrived at in this inquisition. Such being the case, it does not seem to me that it would be proper for me to disturb the finding on this ground.

This disposes of all the exceptions that were relied upon at the argument.

and being of the opinion, for the reasons stated, that none of these should be sustained an order will be entered overruling the exceptions and confirming the inquisition.

HENRY D. HARLAN.