KAW VALLEY DRAINAGE DIST. OF WYANDOTTE COUNTY, KAN., et al.
v. METROPOLITAN WATER CO.

(Circuit Court of Appeals, Eighth Circuit. February 24, 1911.)

No. 3,566.

1. EMINENT DOMAIN (§ 68*)—NECESSITY FOR APPROPRIATION—POWER TO DETERMINE.

If the purpose for which property is to be taken under the power of eminent domain is a public one, the necessity for the taking is not a judicial question, but is exclusively within the province of the Legislature, and one which it may determine by direct enactment or by delegating the power to some officer or board.

[Ed. Note.—For other cases, see Eminent Domain. Cent. Dig. §§ 168–170; Dec. Dig. § 68.*]

2. REMOVAL OF CAUSES (§ 4*)—CAUSES REMOVABLE—CONDEMNATION PROCEEDINGS—KANSAS DRAINAGE STATUTE—"SUIT."

The drainage statute of Kansas (Laws 1905, c. 215; Gen. St. 1909, § 3000 et seq.) authorizes the directors of a drainage district to determine when it is necessary to condemn private property for the use of the district and to present a written application to the judge of the district or common pleas court of the county for the appointment of three commissioners to make appraisement and assessment of damages. It then makes it the duty of the judge to make such appointment and requires the commissioners after notice to the owners to make awards and file their re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

port with the county clerk. Either party may appeal from such award to the district court, where the question of compensation alone may be tried. *Held* that, until an appeal has been taken, the proceeding is in the nature of an inquest to determine damages, and is not a "suit," within the meaning of the removal statute of March 3, 1875, c. 137, § 2, 18 Stat. 470, as amended by Act March 3, 1887. c. 373, § 1, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 509), and is not removable into a federal court thereunder.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 18; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 7, pp. 6769-6778; vol. 8, p. 7809.]

3. REMOVAL OF CAUSES (§ 4*)—CAUSES REMOVABLE—CONDEMNATION PROCEEDINGS.

The power of eminent domain may be exercised by the state in such mode as it may see fit. It may be by administrative inquest if provision is made permitting a determination of the amount of damages by a civil action at some period before the proceedings become final or the proceeding may be by a civil action at the outset. If the former, the federal courts are without jurisdiction until the proceedings assume the character of a civil action; but, if the latter, they may have jurisdiction from the inception of the proceeding.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 18; Dec. Dig. § 4.*]

4. CONSTITUTIONAL LAW (§ 280*)—"DUE PROCESS OF LAW"—CONDEMNATION PROCEEDINGS.

. A statute authorizing the condemnation of property by a drainage district is not unconstitutional, as taking the owner's property without "due process of law," because it permits the district to take possession of the land pending appeal from the award of compensation on paying the amount of the award and securing payment of any additional amount which may be recovered.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 877-890; Dec. Dig. § 280.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227-2256; vol. 8, p. 7644.]

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit in equity by the Metropolitan Water Company against the Kaw Valley Drainage District of Wyandotte County, Kan., George Stumpf, L. J. Mason, and Al Mebus. Defendants appeal from an order granting a preliminary injunction. Reversed.

L. W. Keplinger and C. W. Trickett, for appellants.

Willard P. Hall, Charles F. Hutchings, and O. L. Miller (Miller, Buchan & Miller, Samuel Maher, and McCabe Moore, on the brief), for appellee.

Before HOOK and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. The Legislature of the state of Kansas in 1905 authorized the formation of drainage districts in the several counties of the state by the board of county commissioners, upon the presentation to them of a proper petition, showing that the lands and property therein embraced are subject to injury and dam-

age from the overflow of some natural water course, naming or describing it, and that the improvement of the channel or water course, the construction and maintenance of levees, drains, or other works, are necessary to prevent such overflow, and that such improvement or work will be conducive to the public health, convenience, or welfare. Upon the organization of such district it was provided that the taxpayers residing within the district should elect a board of five directors, and said drainage district should be declared to be a body corporate with power to sue and be sued in its corporate name.

The statute provided, in substance, that the board of directors shall have power, whenever it shall be deemed necessary to appropriate any private property for use by the district in widening, deepening, or otherwise improving, any natural water course to prevent the overflow thereof, or for the construction of any levee, to cause a survey and description of the lands so required to be made by some competent engineer and filed with its secretary. The board was thereafter authorized to make an order declaring that the appropriation of such land was necessary, setting forth for what purpose the same was to be used. The board of directors, as soon as practicable thereafter, was required to present a written application to the judge of the district court or the court of common pleas of the county in which the land was situated, describing the land sought to be taken, setting forth the necessity for the appropriation thereof for the use of the district, and praying for the appointment of three commissioners to make appraisement and assessment of damages therefor. Upon the presentation of such petition by such board of directors, or its attorney, the judge to whom the same was presented was required forthwith in writing to appoint such commissioners, and deliver a certificate thereof to the said board of directors, or its attorney, who were required without delay to cause the application and certificate of appointment to be recorded in the office of the register of deeds of the county. The commissioners so appointed were required to take an oath to honestly and faithfully discharge their duties, and to give all owners of property sought to be taken at least 10 days' notice of the time and place when and where the damages would be assessed, such notice to be given by one publication in some newspaper published in the county, and at the time fixed in such notice the commissioners were required, upon actual view, to appraise the value of the lands taken and to assess the other damages done to the owners of the property, respectively, by such appropriation. The commissioners were authorized to adjourn from time to time as they deemed convenient, correct all errors or omissions in the giving of notice by serving new notices or making new publications, and were authorized to make from time to time partial reports, and upon completing their duties to make a final report. Such reports were to be in writing and filed in the office of the clerk of the county. In such reports the commissioners were required to accurately describe the land by them set forth and appropriated, the purpose for which the same was taken, the name of each owner, if known, and appraise each owner's interest and assess his damages separately. The county clerk was required, upon any such report being filed, forth-

with to prepare and deposit a copy thereof in the office of the treasurer of the county, and, if the drainage district should pay to such treasurer the amount in full of such appraisement within 90 days of the time of filing such report, it was the duty of the treasurer to thereupon pay the same to the person or persons severally entitled thereto.

Any person being or claiming to be the owner of any lands so condemned or appropriated, deeming himself aggrieved by the award of said commissioners, could appeal from the award of said commissioners to the district court of the county; but such appeal should only affect the amount of compensation to be allowed and should not delay the prosecution of the work of the district, upon the district paying or depositing the amount assessed by such commissioners with the county treasurer, as aforesaid, and said district, upon executing a bond with sufficient surety to be approved by the county clerk to pay all damages· or costs which said district might be adjudged to pay by said district court, was authorized, notwithstanding such appeal, to take possession of, appropriate, and use said land for the purposes for which it was condemned. Provision was also made in the statute allowing the drainage district, under certain circumstances, to appeal if desired from the award of such commissioners.

The Kaw Valley Drainage District, organized pursuant to the statute, on the 4th day of January, 1911, by its board of directors, presented its application to the judge of the district court of Wyandotte county, reciting the facts required by the statute to be recited in such application, praying for the appointment of commissioners to assess the damages to the owners of the property sought to be taken and damaged. On the following day, January 5th, respondent presented to the judge of the district court of Wyandotte county a petition and bond for the removal of such proceedings, instituted and taken by said drainage district for the appointment of commissioners, as aforesaid, to the Circuit Court of the· United States for the District of Kansas; said petition and bond being in proper form and the security adequate. Such petition and bond were filed with the clerk of the district court of said Wyandotte county. The petition for removal was by the judge of said court denied, and the appellants Stumpf, Mason, and Mebus were by said judge appointed commissioners. The commissioners accepted the office, took the oath required by statute, and on the 6th day of January, 1911, caused a notice to be published, being such notice as was required by the statute, stating that they (the commissioners) would meet at 10 o'clock a. m., on the 19th day of January, 1911, at the east end of the James Street Bridge over the Kansas river, in Kansas City, Kan., and thereupon proceed, upon actual view, to condemn for the use of the drainage district the tracts of land described in the notice, and appraise the value of the land and assess the true damages done to the owners thereof.

Thereafter, and on the 13th day of January, 1911, plaintiff, having filed a transcript of the proceedings relating to the removal in the Circuit Court of the United States, filed its bill in the Circuit Court of the United States for the District of Kansas, setting forth the proceedings of said drainage district for the appointment of the commis-

sioners, its application to remove said proceedings into the United States Court, that such proceedings were of a civil nature and properly removable to the Circuit Court of the United States, and praying for an injunction to restrain said drainage district and the commissioners so appointed from farther proceeding in said matter, for the reason that the entire proceeding was then pending in the Circuit Court of the United States, and such commissioners had no authority to thereafter proceed excepting by the order and direction of said Circuit Court. It was farther alleged that the said legislative enactment was unconstitutional and void, in that it deprived complainant of its lands without due process of law, in violation of the fourteenth amendment to the Constitution of the United States, in that it authorized, after the award of damages by the commissioners, the taking possession of the lands so appropriated by the drainage district to its own use, pending an appeal to the District Court. A temporary order of injunction was granted as prayed. From such order the drainage district has prosecuted this appeal.

[1] The power of eminent domain is one which the state may exercise for any public purpose. Whether the purpose for which property is sought to be taken and used be a public one is undoubtedly the subject of judicial determination in a proper case. If the use be a public one, and it is here, whether the necessity for the taking exists is exclusively within the province of the Legislature of the state to say; such necessity may be determined by a direct legislative enactment, or its determination may be by the Legislature delegated to some officer or board. The question of the necessity is not necessarily one of a judicial character. Buckwalter v. School District, 65 Kan. 603, 70 Pac. 605; Boom Co. v. Patterson, 98 U. S. 403–406, 25 L. Ed. 206; Backus v. Fort Street Union Depot Co., 169 U. S. 557–568, 18 Sup. Ct. 445, 42 L. Ed. 853. It was said in the last-cited case:

"Neither can it be said that there is any fundamental right secured by the Constitution of the United States to have the questions of compensation and necessity both passed upon by one and the same jury. In many states the question of necessity is never submitted to the jury which passes upon the question of compensation. It is either settled affirmatively by the Legislature, or left to the judgment of the corporation invested with the right to take property by condemnation. The question of necessity is not one of a judicial character, but rather one for determination by the lawmaking branch of the government. * * *

"It is within the power of the state to provide that the amount shall be determined in the first instance by commissioners, subject to an appeal to the courts for trial in the ordinary way; or it may provide that the question shall be settled by a sheriff's jury, as it was constituted at common law, without the presence of a trial judge. These are questions of procedure which do not enter into or form the basis of fundamental right. All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation, and when this has been provided there is that due process of law which is required by the federal Constitution."

While it is true that the state may not deprive the federal court of its jurisdiction to determine matters of a judicial nature which are within the federal judiciary act, it by no means follows that, in all instances, the proceedings to take private property for public use, which

are prescribed by the sovereign power of the state, must be from the inception judicial.

Boom Co. v. Patterson, supra, was a case in which condemnation proceedings had been instituted in the state of Minnesota. The statute of that state provided that the party seeking to condemn private property for a public use should apply to the district court of the county in which the property was situated for the appointment of commissioners to appraise its value and take proceedings for its condemnation. The law provided that they should give notice to the owners of the land before the appraisement was made. If the award of the commissioners should not be satisfactory, any one claiming an interest in the land was authorized to take an appeal to the district court, where it was to be entered by the clerk "as a case upon the docket." The court was then required to "proceed and determine such case in the same manner as other cases are heard and determined in said court." In that case an appeal was taken to the district court of the state from the award of damages by the commissioners, and the cause thereafter removed from the district court of the state to the United States court. The question was presented as to whether or not the United States court acquired jurisdiction in removal; the court saying:

"The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest, to ascertain its value, and not a suit at law in the ordinary sense of those words. But, when it was transferred to the district court by appeal from the award of the commissioners, it took, under the statute of the state, the form of a suit at law and was thenceforth subject to its ordinary rules and incidents. The point in issue was the compensation to be made to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the district court."

In Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, among the questions presented was one as to when a condemnation proceeding instituted by the city of Kansas City, Mo., for the purpose of widening a street running through the depot grounds of the railroad, became an action so as to be removed into the federal court. By the statute law in that case, proceedings were instituted and tried before the mayor and a jury, from which an appeal could be taken to the circuit court of the county. The case was tried before the mayor and a jury and an appeal taken to the circuit court and removed from the circuit court of the county to the Circuit Court of the United States. It was contended in opposition to the removal that, as it was a case that had once been tried before the mayor and a jury, the application to remove after the appeal to the circuit court came too late. The court, on page 18 of 115 U. S., on page 1121 of 5 Sup. Ct. (29 L. Ed. 319), said:

"The second ground of objection, that the cause had been once tried before the mayor by a jury, and an appeal taken, before a petition for removal was filed, and therefore the application was too late, is answered by the reasoning of this court in the case of Boom Co. v. Patterson, 98 U. S. 403 [25 L. Ed. 206], which was a case very similar in this respect to the present. It was there held that the preliminary proceedings were in the nature of an inquest to ascertain the value of the property condemned, or sought to be condemned by the right of eminent domain, and was 'not a suit at law

in the ordinary sense of those terms,' consequently not 'a suit' within the meaning of the removal acts; but that, 'when it was transferred to the district court by appeal from the award of the commissioners, it took, under the statute of the state, the form of a suit at law and was thenceforth subject to its ordinary rules and incidents.' "

Searl v. School District, 124 U. S. 197, 8 Sup. Ct. 460, 31 L. Ed. 415, was a case in which condemnation proceedings had been instituted in Colorado by the school district, to condemn certain land for school purposes. The statute law of Colorado was summarized by Justice Matthews, who delivered the opinion of the court, as follows:

"The Code of Civil Procedure of that state provides for the appropriation of private property for public use, and authorizes a judicial proceeding in the district or county court for the purpose of ascertaining and awarding the amount of compensation to be paid therefor. It requires the filing of a petition setting forth the authority of the plaintiff to acquire the property in that mode, the purpose for which it is sought to be taken, a description of the property, and the names of all persons interested therein, who are to be made defendants and brought into court by the service of a summons or other process, as in other cases is provided by law. It provides, in the first instance, for the ascertainment of the amount of compensation or damages by a commission of three freeholders, but also that before the appointment of such commissioners any defendant may demand a jury of six freeholders residing in the county, to ascertain, determine, and appraise the damages or compensation to be allowed, and prescribes in such case the mode of trial, at which the court or judge shall preside in the same manner and with like power as in other cases; that evidence shall be admitted or rejected by the court or judge according to the rules of law; and at the conclusion of the evidence that the matters in controversy may be argued by counsel to the jury, and at the conclusion of the argument that the court or judge shall instruct the jury in writing in the same manner as in cases at law; that, motions for a new trial, and to set aside the verdict, may be made and heard as in other cases; that an appeal may be taken to the Supreme Court in the same manner as provided by law for taking appeals from the district court to the Supreme Court; and that a writ of error from the Supreme Court shall lie in every such case to bring in review the final determination."

It was held that such a proceeding was a suit within the meaning of the Constitution and acts of Congress, conferring jurisdiction upon the courts of the United States. Comparing the case with the cases of Boom Co. v. Patterson and Pacific Railroad Removal Cases, it was said:

"The appointment of the commissioners is not, as in the case of Boom Co. v. Patterson and the Pacific Railroad Removal Cases, a step taken by the party seeking to make the appropriation ex parte and antecedent to the actual commencement of the adversary proceeding inter partes, which constitutes a suit in which the controversy takes on the form of a judicial proceeding, because under the Colorado law the appointment of the commissioners is a step in the suit after the filing of the petition and the service of summons upon the defendant. It is an adversary judicial proceeding from the beginning. The appointment of commissioners to ascertain the compensation is only one of the modes by which it is to be determined. The proceeding is therefore a suit at law from the time of the filing of the petition and the service of process upon the defendant."

It is, however, urged that the more recent case of Traction Co. v. Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, is a final determination that any step or proceeding by the state to take private property for public use is, from its inception, a civil action within the meaning of the federal judiciary act. We find nothing in that case

which warrants such conclusion. The language of the court in each opinion must be construed with reference to the case before the court. In that case the court was considering the question whether, under the statute law of Kentucky, a condemnation proceeding was, from the inception, a suit or action within the meaning of the judiciary act. Under the statute of Kentucky the proceeding to take private property for public use required the filing of a petition in the office of the county court, containing a description of the land, etc., and have commissioners appointed to assess the damages to which the owner was entitled. The commissioners were required to make their award of damages in writing, giving the names of the owners, etc. The clerk of the court was required to issue process against the owners of the property to show cause why the report should not be confirmed. At the first regular term after the owners should have been summoned, the court was required to examine the report and pass upon it. If exceptions were filed by either party, it was required that a jury be impaneled to try the issue of fact and judgment rendered in conformity to the verdict, if sufficient cause to the contrary should not be shown. Each and every step taken was a proceeding in the county court. Either party was entitled to appeal to the circuit court. In that case, after the report of the commissioners had been filed and process issued against the mining company, it filed its petition and bond for removal of the case before the court had taken action upon the report. The contention in the case was that, as the federal court could not, under the judiciary act of 1887 and 1888, acquire jurisdiction by removal, except in cases in which the court would have had original jurisdiction, removal could not be had because the proceeding being one in which the state was exercising a sovereign power, the federal court would not have original jurisdiction. It was, however, held that, under the statutes of Kentucky, the state had delegated the right to exercise this sovereign power to the traction company, that such exercise was to be had by instituting a civil action in the county court, which court was, under the Constitution of Kentucky, a part of the judicial system of that state; that commissioners were to be appointed to ascertain the damages, and process should issue against the mining company; that, if exceptions were filed to their report which presented any issue of fact, such issue of fact was to be tried in court as other cases. Under the Kentucky statute there was nothing to prevent the federal court from fully and completely exercising the jurisdiction conferred upon the county court. The petition could have been filed in the Circuit Court of the United States, commissioners appointed by that court, process to defendant could have been issued from that court, exceptions filed to their report, and issues of fact tried by a jury, and judgment rendered thereon in that court as in the county court. In that case the doctrine announced in Boom Co. v. Patterson and Pacific Railroad Removal Cases, supra, that condemnation proceedings may, in their inception, be merely an administrative inquest and not a civil action, was in no respect criticised or overturned; but Boom Co. v. Patterson was cited with approval.

[2] In this case, involving a consideration of the Kansas statute, we are unable to perceive upon what theory it can be said that the

proceeding anterior to the appeal was a civil action, which could have been instituted in the federal court. The petition for the appointment of commissioners is not required to be presented to a court. It is to be presented to the judge of the district or common pleas court, and then, with his order appointing commissioners, filed not in court but with the register of deeds. The Legislature might have designated that the petition should be presented and commissioners named by any executive officer of the state or county. The designation of the judge was merely a description of the person or official who was to act upon the petition in the first instance. The report of the commissioners was not filed in any court, but was to be filed with the county clerk. No exceptions to the report of the commissioners could be made or heard. No proceedings in court were had until an appeal should be taken from the award of the commissioners. When such appeal was taken and lodged in the district court, a civil action was for the first time pending.

[3] The several decisions of the Supreme Court, relating to this subject, are in perfect harmony, to the effect that the power of eminent domain may be exercised by the state in such mode as it sees fit. It may be by administrative inquest, if provision is made permitting a determination of the amount of damages by a civil action at some period before the proceedings become final, or the proceeding may be by a civil action at the outset. If the former, the federal courts are without jurisdiction until the proceedings assume the character of a civil action, when, by the latter mode, federal courts may have jurisdiction from the inception of the proceeding, if the requisite diversity of citizenship and amount in controversy exist.

Complainant's contention that the statute violates the fourteenth amendment to the Constitution of the United States, in that it deprives complainant of its land without due process of law, by permitting the drainage district to take possession of the land pending the final hearing upon appeal, by paying the amount of the appraisement and giving an approved bond to pay any additional sum which should be awarded upon such appeal, has been too often decided against such contention to require extended consideration. The question was before the court in Backus v. Fort Street Union Depot Co., supra, and it was said:

"Does this amount to a denial of the right to that protection to property which is guaranteed by the fourteenth amendment to the federal Constitution? In other words, is it beyond the power of a state to authorize in condemnation cases the taking of possession prior to the final determination of the amount of compensation and payment thereof? This question is fully answered by the opinions of this court in Cherokee Nation v. Southern Kansas Railway, 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295, and Sweet v. Rechel, 159 U. S. 380, 16 Sup. Ct. 43, 40 L. Ed. 188. There can be no doubt that if adequate provision for compensation is made authority may be granted for taking possession pending inquiry as to the amount which must be paid and before any final determination thereof."

The bill in this case having been filed in aid of a jurisdiction wrongfully assumed, it follows that the injunction was improvidently awarded, and the judgment of the Circuit Court granting to complainant a temporary injunction is reversed, and the cause is remanded for proceedings in accordance herewith.