## SMITHER v. UNITED STATES.
### No. 48650.

United States Court of Claims.

July 10, 1950.

No appearance for plaintiff.

Thomas L. McKevitt, Washington, D. C., with whom was Assistant Attorney General A. Devitt Vanech, for defendant. M. Mitchell Bourquin and John E. Lynch, San Francisco, Cal., were on the brief.

Before JONES, Chief Judge and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

We are required to determine the value of 157.59 acres of land flooded by the waters of Shasta Dam in California. Flooding commenced on January 25, 1944. Although one and one-half acres of the tract were not inundated, neither party dis-

putes that there has been a taking of the entire tract. Defendant has taken a fee simple interest in all of plaintiff's land. Plaintiff has been paid nothing and is entitled to compensation measured by the market value of the land at the time of taking.

▮ Plaintiff contends that the market value of 149.59 acres of the tract was $80 per acre and that the market value of the remaining eight acres was $1,000 per acre—a total of $19,967.20. Defendant contends that the market value of the entire tract was not more than $10 per acre, or $1,575.90. Plaintiff's valuation of $80 per acre assumes that the land had a special value, called reservoir value, because of its suitability for use as a part of the reservoir basin for the dam. The special value which land has because of its adaptability to a particular use is properly considered in determining just compensation for its taking. Boom Co. v. Patterson, 8 Otto 403, 98 U.S. 403, 25 L.Ed. 206. But if there is no reasonable probability that such special value could be realized by anyone other than the expropriating authority, then such special value is not an element to be considered. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236. See also United States ex rel. Tennessee Valley Authority v. Southern States Power Co., 319 U.S. 266, 275, 63 S.Ct. 1047, 87 L.Ed. 1390 and Continental Land Co. v. United States, 9 Cir., 88 F.2d 104, certiorari denied, 302 U.S. 715, 58 S.Ct. 36, 82 L.Ed. 552. The construction of Shasta Dam necessitated the relocation of United States Highway No. 99, the main line of the Pacific Telephone and Telegraph Company, two main transmission lines of the Pacific Gas and Electric Company, and the acquisition of 60,000 acres of land. A good part of the necessary land was withdrawn public domain. Although a dam at this site had long been projected, there was never any reasonable probability that private enterprise could have built it; indeed, private concerns had displayed no interest in developing the site and acquiring a reservoir basin. The reservoir value of plaintiff's land cannot, therefore, be considered as affecting its market value. Olson v. United States, supra.

Plaintiff contends that the eight acres for which he claims $1,000 per acre were outside the boundary of the project as originally authorized by Congress. The first statutes authorizing the project, 49 Stat. 1028, 1038, and 50 Stat. 844, 850, refer to Rivers and Harbors Committee Document Numbered 35, Seventy-third Congress. This document proposed a 420-foot dam which would raise the water surface elevation to 1,000 feet. A 1,000 foot water surface elevation would have left eight acres of plaintiff's property unflooded.

However, a 480-foot dam, which raised the water surface elevation to 1,065 feet and inundated all but an acre and a half of plaintiff's land, was decided upon; the construction contract, dated June 1, 1938, was let on that basis. Plaintiff argues that if a 420-foot dam had been built, the unflooded eight acres would have had a special value as lake-shore land for recreational and resort purposes. Plaintiff relies on United States v. Miller, 317 U.S. 369, at page 376, 63 S.Ct. 276 at page 281, 87 L.Ed. 336, 147 A.L.R. 55, where, although the court held that an owner could not have the benefit of an increment of value attributable to the project for which his land was condemned, it was also said: "If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity."

The Miller case does not aid plaintiff. Here, there were not separate takings; there was only one project and one taking. As early as 1938 the chief right-of-way agent for the Bureau of Reclamation had prepared a map showing all the subject property as embraced within the reservoir area. Furthermore plaintiff has not convinced us that a special recreational value would have been created in the eight acres

if the water level had been raised to only 1,000 feet.

Plaintiff's land was steep rolling mountain land covered with manzanita and buck brush and only lightly wooded. It was very poor pasture land and was without access by road. None of it had any special value for recreational or resort purposes. On the basis of all the evidence, including the testimony of expert witnesses and evidence of the selling prices of similar adjacent land at about this time, we have determined that the market value of plaintiff's 157.59 acres at the time of taking, January 25, 1944, was $10 per acre, or $1,575.90.

Plaintiff is entitled to a judgment of $1,575.90 plus interest at four percent from January 25, 1944, to the date of payment. The interest is to compensate for delay in payment and is awarded as a part of just compensation.

It is so ordered.

HOWELL, MADDEN, and WHITAKER, and LITTLETON, Judges, concur.