## UNITED STATES *v.* ALLISON.

The government printing-office not being a bureau or division of either of the executive departments, or mentioned in the joint resolution of Congress of Feb. 28, 1867, 14 Stat. 569, the employés thereof are not entitled to the additional compensation authorized by that resolution.

APPEAL from the Court of Claims.

This was a suit brought by Allison, an employé in the government printing-office, for additional compensation under the joint resolution of Congress approved Feb. 28, 1867 (14 Stat. 569).

The court below found, as a matter of fact, that the claimant was, on the day of the passage of the joint resolution, employed in that office, being paid by the day; and, as a matter of law, that the employés in the government printing-office, on the 28th of February, 1867, were employés in a bureau or division of the Department of the Interior, within the meaning of the joint resolution, and accordingly rendered judgment in favor of the claimant.

From this judgment the United States appealed to this court.

*Mr. Solicitor-General Phillips* for the appellant.

*Mr. James A. Garfield* and *Mr. Joseph Daniels, contra.*

·Mr. Chief Justice Waite delivered the opinion of the court. ·

Allison was an employé in the government printing-office. from June 30, 1866, to June 30, 1867, and, in this suit, claims additional compensation for his services in consequence of. the joint resolution of Feb. 28, 1867. 14 Stat. 569. He contends that the government printing-office was, during the fiscal year commencing July 1, 1866, a bureau in the Department of the Interior. If it was not, he substantially concedes that he is not entitled to the benefit of the resolution.

The Department of the Interior is one of the executive departments of the government. Rev. Stat., sect. 437. It was made so March 30, 1849. 9 Stat. 395. It is specially charged with the supervision of certain executive bureaus. Its present jurisdiction is defined in sect. 441, Rev. Stat. The government printing-office has never been placed under its jurisdiction by any express statute.

On the 26th August, 1852, Congress passed an act entitled " An act to provide for executing the public printing and establishing the prices thereof, and for other purposes." 10 Stat. 30. It is only necessary to say of this act, that it provided for the appointment of a superintendent of public printing, and that he was to give an official bond to be approved by the Secretary of the Interior. His duties were carefully defined; and he was made in fact, what his name implies, the superintendent of the public printing by the public printers. These public printers were, at that time, appointed by the two Houses of Congress, each House appointing its own.

On the 23d of June, 1860, a joint resolution was passed by Congress " in relation to the public printing." 12 Stat. 117. This resolution dispensed with the public printers appointed by the two Houses of Congress, and placed the whole subject of public printing in charge of. the superintendent. In the language of the resolution (sect. 2), he was " to superintend all the printing and binding, the purchase of paper, . . . the purchase of other necessary materials and machinery, and the employment of proof-readers, compositors, pressmen, laborers, and other hands necessary to execute the orders of Congress and of the executive and judicial departments at the city of

Washington." To enable him more effectually to perform his duties, he was to appoint a foreman of printing and a foreman of binding. These foremen were required to report to him, and to furnish him their estimates of the amount and kind of material required. He furnished them their supplies, for which they accounted to him. He was also to report to Congress at the beginning of each session the number of hands employed, and the length of time each had been employed: and by sect. 9 it was made his duty to report to Congress " the exact condition of the public printing, binding, and engraving; the amount and cost of all such printing, binding, and engraving; the amount and cost of all paper purchased for the same; a statement of the several bids for materials; and such further information as may be within his knowledge in regard to all matters connected therewith." By sect. 3 he was required to render to the Secretary of the Treasury, quarterly, a full account of all purchases made by him, and of all printing and binding done in his office for each of the Houses of Congress and for each of the executive and judicial departments. The Secretary of the Treasury was also authorized to advance money to him on account, and he was to settle his accounts of receipts and disbursements in the manner then required of other disbursing officers. By sect. 9 it was made the duty of the superintendent, annually, to prepare and submit to the register of the treasury, in time to have the same embraced in the general estimates from that department, detailed estimates of salaries and other necessary expenses of the printing establishment for the second year. By sect. 7 the joint committee on printing for the two Houses of Congress was directed to fix upon a standard of paper for the printing of congressional documents. The superintendent was to advertise for proposals to furnish the government all paper necessary for the execution of the public printing, and to furnish samples of the standard paper to applicants therefor. The bids were to be opened by him in the presence of the secretary of the Senate and the clerk of the House of Representatives, and he was required to award the contract to the lowest bidder. All differences in opinion between the superintendent and the contractors were to be settled by the joint committee on printing of the two

Houses. Whenever engraving was required to be done to illustrate any document ordered to be printed by either House of Congress, the superintendent was to procure it to be done under the supervision of the committee on printing of the House making the order. Sect. 8. By sect. 7 it was provided, that, if the contractor for furnishing paper failed to make his deliveries, the superintendent might purchase for temporary supply in the open market, "by and with the approval of the Secretary of the Interior." He was also, by the same section, to render to the Secretary of the Interior, at the end of each fiscal year, an account of all paper received from contractors, and of all paper used for the purposes of the government under that act; and also the amount of each class consumed in the printing establishment, and in what works the same were used. Defaults by contractors in furnishing paper under their contracts were to be reported by the superintendent, with a full statement of all the facts, to the solicitor of the treasury for prosecution.

The commissions of all officers under the direction or control of the Secretary of the Interior must be made out and recorded in the Department of the Interior, and the seal of the department must be affixed thereto. 10 Stat. 297, sect. 3. The court below has found as a fact, that "in 1867 the commission of the superintendent of public printing was made out and recorded in the Department of the Interior, and the seal of the department affixed thereto, pursuant to the provisions of" this act. It nowhere appears that any act of Congress expressly required this to be done; neither does it appear at what time in the year 1867 this commission was issued or recorded.

On the 22d February, 1867, Congress passed an act entitled "An act providing for the election of the congressional printer." By this act, the Senate was to elect some competent person "to take charge of and manage the government printing-office." He was given the same powers as the superintendent of public printing. From and after the election of the congressional printer, the office of superintendent of public printing was abolished. 14 Stat. 397. The Senate elected a congressional printer in pursuance of this act, Feb. 26; but he did not take possession of his office until March 1, and the superintendent

continued to act until that time.    The superintendent was act-
ing on the 28th February, when the resolution under which
Allison claims was passed.

In *Manning's Case*, 13 Wall. 578, it appeared that the guards
of the jail in the District of Columbia were selected by the
warden, but that their compensation was fixed and paid by
the Secretary of the Interior.    It also appeared that the whole
subject of the jail was under the supervision of the secretary,
to whom the warden was required to report.    Under these
circumstances, we held that the office of the warden of the jail
was a bureau or division of the Department of the Interior.

This is as far as any case has yet gone.    The Secretary of
the Interior has no control whatever over the employment of
men by the superintendent of public printing.    He cannot fix
their wages or supervise the action of the superintendent in
that particular.    He does not pay them, and has no control
whatever of the funds out of which they are paid.    He may
pay the superintendent for printing done upon the order of his
department; but the superintendent disburses without any ac-
countability to him.    In short, the superintendent seems to have
a department of his own, in which he is in a sense supreme.
Certainly he is not under the control of any one of the executive
departments.    Apparently he is more responsible to Congress
than to any other authority.    The Secretary of the Interior
keeps and approves his bond.    The same secretary must, under
some circumstances, approve his purchases of paper in open
market.    He sends to that department also his accounts of the
receipts and disbursements of paper.    The joint committee on
printing in the two Houses of Congress settle all disputes be-
tween him and his contractors for the delivery of paper.    He
reports to Congress in respect to his employés, and to the
Secretary of the Treasury in respect to his receipts and dis-
bursements.    From that department also he draws his money
upon proper requisitions.    He is under the direction of the com-
mittees of each House of Congress in respect to engraving, and
he goes to the Secretary of the Treasury with his estimates.

In our opinion, his employés, as they are not specially enu-
merated, are not included in the resolution of Feb. 28, 1867;
and, on that account, this claim cannot be maintained.

The view we have taken of this case makes it unnecessary to consider the effect of the election of a congressional printer on the 26th February, 1867.

*The judgment of the Court of Claims is reversed, and the cause remanded, with instructions to dismiss the petition.*