MINERAL RANGE R. CO. *v.* DETROIT & LAKE SUPERIOR COPPER CO.

(*Circuit Court, W. D. Michigan.* October 26, 1885.)

1. REMOVAL OF CAUSE — PROCEEDING TO CONDEMN LAND FOR RAILROAD PURPOSES — STATE STATUTE.

A state statute provided that proceedings for the condemnation of land for railway purposes should be instituted in the probate court of the proper county; that the necessity for taking the lands, and their value, should be determined by commissioners or a jury selected by such court; and that such proceedings should only be subject to review by the supreme court. Under this statute a railroad company petitioned the probate court for the condem-

nation of defendant's lands. The defendant answered the petition, and demanded a removal of the case to the federal court. *Held*, that the case was removable directly from the probate court.

2. SAME—EMINENT DOMAIN.

It is no objection to the jurisdiction of the federal court in such cases that it involves the exercise of the right of eminent domain.

On Motion to Remand.

On the fourteenth of September, 1885, the Mineral Range Railroad Company filed its petition in the probate court for the county of Houghton for the condemnation of certain lands owned by the defendant in the village of Hancock for the purpose of constructing a branch of its road across these lands from Houghton to Hancock. The defendant shortly thereafter answered the petition, and upon the same day filed its petition in the probate court for the removal of the cause to this court, upon the ground that it was a citizen of the state of Connecticut. The removal was ordered, and a transcript of the record immediately filed in this court. The railroad company thereupon moved for the appointment of three commissioners under the statute, accompanying its motion with an oral motion to remand for want of jurisdiction.

*W. P. Healy*, for the railroad company, petitioner.

*T. L. Chadbourne, C. B. Grant*, and *Otto Kirchner*, for the copper company.

BROWN, J.[1] In delivering the opinion of the supreme court in *Gaines* v. *Fuentes*, 92 U. S. 10, 19, Mr. Justice FIELD remarked that the removal act of 1867 covered every possible case involving a controversy between citizens of the state where the suit was brought and citizens of other states, if the matter in dispute, exclusive of costs, exceeded the sum of $500; that it mattered not whether the suit was brought in a state court of limited or general jurisdiction. "The only test was, did it involve a controversy between citizens of the state and citizens of other states, and did the matter in dispute exceed a specified amount? And a controversy was involved in the sense of the statute whenever any property or claim of the parties capable of pecuniary estimation was the subject of the litigation, and was presented by the pleadings for judicial determination." That controversies of the general nature of this are "suits of a civil nature at law" was settled in *Boom Co.* v. *Patterson*, 98 U. S. 403, which was also a proceeding under a statute of Minnesota for the condemnation of land under the right of eminent domain. There is, however, a difference in the methods of procedure under the two statutes which takes the case under consideration out of the language of the opinion in the Minnesota case, and involves it in a difficulty which was not there presented. In Minnesota the course was for the corporation to apply to the district court of the county for the appointment of commissioners to appraise the value of the land, and take proceedings for its con-

[1] Eastern District of Michigan.

demnation. If the award of the commissioners was not satisfactory to either party, an appeal might be taken to the district court, where it was entered by the clerk as "a case upon the docket;" the persons claiming interest in the land being designated as plaintiffs, and the company seeking its condemnation as defendant. The court was then required "to proceed to hear and determine such case in the same manner" that other cases were heard and determined, with the aid of a jury, unless a jury was waived. The value of the land being assessed, the amount of the assessment was to be entered as a judgment against the company, subject to a review by the supreme court. A similar question arose in one of the *Pacific Railroad Removal Cases*, 115 U. S. 1, S. C. 5 Sup. Ct. Rep. 1113, and was held to have been answered by the reasoning in the *Patterson Case*.

In this state the act provides that, in case the railroad company is unable to purchase the needed land, it shall present its petition to the probate court, or the judge thereof, with proof of service of notice to all persons interested, who may show cause against the prayer of the petition and may disprove any of the facts alleged therein. Upon hearing the proofs and allegations of the parties, if no sufficient cause is shown against granting the prayer of the petition, the court or judge shall appoint three freeholders as commissioners to determine the necessity for taking the land, and to appraise the damages to be allowed to the owner, provided that either party may demand a jury whose powers shall be the same as those of the commissioners. Upon the report of the commissioners or the jury being filed, the court shall confirm the same, unless for good cause shown by either party, and shall direct to whom the money shall be paid. Within 20 days after the confirmation of the report either party may appeal to the supreme court, specifying the objections to the proceedings, and the supreme court shall pass upon such objections only, all other being deemed to have been waived.

There is no provision in this act for an appeal to the court from the award of the commissioners, and the forming of an issue to be tried by a jury, as were the cases in Minnesota and Kansas. But if a jury be demanded, the case is at once referred to them, and they proceed to pass both upon the necessity for condemning the lands in question, and upon the amount of compensation to be awarded the owners, acting, as has been held by the supreme court, both as judges of law and of fact, although, by the terms of the act, the judge may attend the jury to decide questions of law and administer oaths to witnesses. In *Hess* v. *Reynolds*, 113 U. S. 73, S. C. 5 Sup. Ct. Rep. 377, there was also a provision for an appeal from the allowance of the commissioners appointed by the probate court to the circuit court of the county, where an issue was framed for trial by jury. Did the statute for the condemnation of land also provide for an appeal from the probate court to the circuit court, and the framing of an issue there, we should find no difficulty in holding, as was held in that

case and in *Boom Co.* v. *Patterson*, that the removal should be had from the circuit court, and not from the probate court. But does the failure of the statute to provide for an appeal from the award of the commissioners to the circuit court, and the framing of an issue there, deprive the case of its removable character? We think not. Had the petition been in the general form contemplated in some cases for the condemnation of all the land within the county needed for the purposes of the railway, making all the owners along the line of its road parties defendant, it might be a serious question whether a single non-resident proprietor whose property was sought to be taken could remove the case, even so far as it respected himself, to this court, although this also seems to be answered in the *Pacific Railroad Cases,* 115 U. S. 19; S. C. 5 Sup. Ct. Rep. 1113. But we do not find it necessary to determine whether there might not be cases of this description to which the removal acts would not apply. In this case the railroad seeks the condemnation of a single specific parcel owned by the defendant. To its petition the defendant has filed its answer, setting forth its reasons why the prayer of the petition should not be granted. There is here a single, indivisible suit or controversy to obtain the possession of land in which the railroad company is plaintiff and the copper company is defendant, and the case does not differ essentially from an ordinary action of ejectment, except in the fact that plaintiff offers compensation for the lands it seeks to condemn.

Further objection is made to our assumption of jurisdiction, for the reason that it involves the exercise of the right of eminent domain, which is claimed to be non-judicial in its character, and therefore a special proceeding, to be carried on solely by virtue of the statute, in the courts of the state therein designated. The same position was taken by the landowner in the case above referred to, viz.: that the proceeding to take private property for public use was an exercise by the state of its sovereign right of eminent domain, and with its exercise, the United States, a separate sovereignty, had no right to interfere. The position was said to be a sound one so far as the act appropriating the property was concerned; that when the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. "The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested. But, notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance."

We understand the meaning of this language to be substantially this: That the right of eminent domain, or of appropriating private property to public use, is a sovereign right, vested in the state itself, acting through its legislature; that the state may delegate this right

to railway and other corporations, as it has done in this state, and may impose upon the exercise of the right such conditions as it chooses, with reference to the manner in which the application shall be made, the necessity for the appropriation of any particular lands determined, and their value ascertained, and when the court observes that the necessity of appropriating any particular property is not a subject of judicial cognizance, it means simply that it is not *necessarily* a subject of judicial cognizance. The legislature may seize upon and appropriate directly a piece of private property, upon paying the owner its value, or it may authorize a corporation to do this by an appeal to its judicial tribunals. The court itself has no right to appropriate property; but in carrying out the will of the legislature, and in making the proper inquiries as to the necessity of the appropriation and the value of the lands, it is exercising judicial power. "If that inquiry take the form of a proceeding before the courts between parties, the owners of the land on the one side, and the company seeking the appropriation on the other, there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the state." In the Minnesota case, as reported in 3 Dill. 465, it appears that the boom company was authorized by a special act to condemn the land necessary to its business, while in this state the same power is conferred by a general act upon all railroad companies. There is, however, no practical difference in the nature of the power vested in the courts in each case.

It is true, there are some expressions in the cases of *Toledo, etc., Ry. Co.* v. *Dunlap*, 47 Mich. 456, 462, S. C. 11 N. W. Rep. 271, and *Port Huron, etc., Ry. Co.* v. *Voorheis*, 50 Mich. 506, S. C. 15 N. W. Rep. 882, which indicate that, in the opinion of the supreme court, these proceedings to condemn lands are not in themselves, and never have been, regarded as judicial proceedings, because the legislature might, and sometimes does, authorize such proceedings to be carried on before highway commissioners or other non-judicial bodies, and because, even when acting by appointment from a court of justice, the jury or commissioners are judges of the law as well as of the facts. But Mr. Justice CAMPBELL afterwards qualifies this remark to a certain extent by observing that "they are not judicial proceedings in the ordinary sense;" a comment in which we entirely concur. We understand, however, that whenever a court of justice is called upon to determine or adjust the rights of two or more parties standing adversely to each other, the court is acting in a judicial capacity, whether the decision of the question presented lies with a judge, or a jury, commissioners, or referees selected by the court. Especially is this the case when such proceedings are subject to review by an appellate tribunal. *In re New York Cent. R. Co.*, 66 N. Y. 407, 409, the court of appeals held that the power of determining what lands were necessary to be appropriated to the use of railways was a judicial question, and, when

controverted, the facts must obviously, in some form, be laid before the court to enable it to decide. So, in *Warren* v. *Wisconsin R. Co.*, 6 Biss. 425, which was also a proceeding to condemn land for railway purposes, a motion was made to remand, on the ground that, as it was a proceeding by the state in the exercise of its right of eminent domain, the suit was to be regarded as substantially a suit against the state, of which the federal court had no jurisdiction. The motion, however, was denied; the court holding that the state had no interest in the controversy, and that, although it was a special proceeding, it was a suit within the meaning of removal acts. In *Railway Co.* v. *Whitton's Adm'r*, 13 Wall. 270, the supreme court holds that when a general rule as to property, or personal rights or injuries to either, is established by state legislation, its enforcement by the federal courts in a case between proper parties is a matter of course, and the jurisdiction of the court in such case is not subject to state limitation. In *Weston* v. *City Council of Charleston*, 2 Pet. 449, it was said that the term "suit" was certainly a very comprehensive one, and was understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords him. But we think this point is also covered by the case of *Kohl* v. *U. S.*, 91 U. S. 367, in which the circuit court was sustained in assuming jurisdiction of a proceeding to enforce the right of eminent domain in favor of United States, to condemn lands for a government building, although there was no statute authorizing the proceeding. That it was a suit was said to admit of no question. If proceedings to condemn be a suit, then the conduct and determination of such suit must be an exercise of judicial power.

But conceding that if the only question in this case were the amount of damages to be paid by the railroad company, the jurisdiction of this court would be sustained by the authorities above cited, it is insisted that these cases are inapplicable, because by the statute of this state the jury or commissioners must pass upon the question of the necessity for taking the property, as well as the amount of damages to be awarded. But we think that in this particular counsel overlook the distinction between the *power* to condemn, which confessedly resides in the state, and *proceedings* to condemn, which the state has delegated to its courts. The proceeding is certainly not deprived of its character as a suit by reason of its taking cognizance of this additional question; and if it be a suit, the right of removal attaches. Wherever a right is given by the law of a state, and the courts of such state are invested with the power of enforcing such right, the proceeding may be removed to a federal court if the other requisites of removability exist.

The motion to remand must be denied, and the case will proceed in the manner provided for in the state statute.