SIMONTON, Circuit Judge.
This case again comes up to strike from the files of the court the exceptions taken by the defendant, the Southern Railway, to the report of Messrs. Scales, Walker, and Hodgin, commissioners, filed with the clerk of this court on the 21st April, 1899. This report assessed the damages to the defendant caused by the condemnation of the right of way on its road by the plaintiff. The motion further asks that the said report be affirmed.
Numerous exceptions were filed to this report on behalf of the defendant. A large majority of them have heretofore been considered and ruled upon by the court. It is necessary at this time to discuss but one, as this goes to an essential point. That exception, in effect, is that under the law and practice of the United States courts no issue of fact in a case at law can be decided except by the verdict of a jury, unless both parties agree otherwise; that in this case the issue of fact, to wit, the amount of damages to be assessed, has been decided by three commissioners, the defendant in no wise assenting thereto; so the finding, being contrary to the law and practice of this court, must be set aside.
*157 By the Code of North Carolina of 1883, § 2007, any telegraph company incorporated in any state is authorized to construct, maintain, and operate lines of telegraph along any railway or other public highway in the state of North Carolina, so, however, as not to obstruct or hinder the usual travel on such railroad or highway. Section 2009 gives the right to condemn such right of way. Section 2010 provides the method in which such condemnation should begin, to wit, by petition filed in the superior court of the county in which the lands are situated, or through which the easement extends, describing the same, making the claimant of the land or easement a party defendant, with the provision that, if the right claimed is over an easement or right of way extending into or through more than one county, the controversy can be adjusted in one county into or through which the easement extends. ' Section 2012 provides that proceedings for the condemnation of lands, or any easement, or interest therein, for the use of telegraph companies, appraisement of the lands, or interest therein, the duty of commissioners of appraisal, the right of either party to file exceptions, the report of commissioners, the mode and manner of appeal, the power and authority of the court or judge, the final judgment and the manner of its entry and enforcement, and the rights of the company pending the appeal, shall be as prescribed in the chapter of which this section forms a part for condemning lands to the use of railways. This chapter is chapter 49 of this Code. The effect of this reference to that chapter is the same as if every one of the sections prescribed in the proceedings and all matters appertaining to the condemnation of property were repeated in this section, and made a part thereof. Among other things, this chapter provides (section 1945) that upon hearing the petition and proofs, the court, if no sufficient cause to the contrary be shown, shall make an order for the appointment of three disinterested and competent freeholders, residents in the county where the premises are to be appraised. Section 1946 provides that these commissioners, having been sworn fairly and impartially to appraise the lands mentioned in the petition, may examine witnesses, reduce the testimony to writing, and ascertain and determine the compensation which should be justly made to the party whose property is condemned. They shall report the same to the court, which shall hear the same, -and any exceptions thereto, with a right of appeal up to the Supreme Court. The court hearing the return and exceptions may direct a new appraisement, modify or confirm the report, or make such order in the premises as may seem right and proper.
In the case at bar the Postal Telegraph Cable Company filed its-petition praying condemnation of the right of way over the Southern Railway in the superior court of Guilford county, N. C., on the nth June, 1898. On the 22d June, 1898, the Southern Railway Company filed its petition for the removal of the case into this court. The Supreme Court of the United States seems to have settled the question of removal of cases of this character. It holds that they may be removed if there be a diversity of citizenship. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; and Searl v. School Dis *158 trict No. 2, 124 U. S. 199, 8 Sup. Ct. 460, 31 L. Ed. 415. The cause having been removed, this court, pursuing the method in such cases made and provided by the statute of North Carolina, heard the petition and all exceptions thereto, and, after hearing and passing upon them, made an order providing for the appointment of three disinterested and competent freeholders residing in the county of Guilford to ascertain and determine the. compensation which ought justly to be made by plaintiff to defendant. These commissioners, having been appointed, and their appointments confirmed, were sworn, and proceeded to act, and have made a report of their proceedings and conclusion filed, as has been said, on the 21st April, 1899. Very much litigation has attended these proceedings at every step. Many exceptions have been filed by the defendant, covering every stage of the case. Objections, many of which have been considered and overruled, are presented again to the court. Plaintiff- now moves to strike these exceptions from file. This will not be done. The exceptions are evidently intended to assist an appellate court in reviewing the whole action of this court.
As has been said, however, but one exception will now be considered, as that goes to the essence of the controversy. That exception is that under the law and practice of this court a defendant is entitled tp a verdict of a jury on’ an issue of fact, to wit, the amount of compensation to which the defendant is entitled for the right of way condemned. The question thus made is not without difficulty. It is made in a case removed from the state court into this court. The precise point has never been decided by the Supreme Court. The right which the plaintiff is seeking to enforce is derived from, and is wholly dependent upon, the sovereign right of eminent domain.of the state of North Carolina. This right’, for special purposes, has been delegated by the state to telegraph companies of which plaintiff is one. And the notice that the right is delegated to-telegraph companies to condemn the right of way of a railroad company is given by this statute to all railroad companies, foreign or domestic, owning or acquiring a right of way in North Carolina. In thus delegating its authority the state has carefully and specifically set out in detail how it shall be instituted, how exercised, how controlled, and how corrected. The state 'has declared that the assessment shall be made by freeholders resident in the state and in the county where the property lies or through which it passes. ■ Unquestionably, the state could do this. She was exercising a sovereign right. She was dealing with a title, of land within the state, was legislating how such title could pass. No one can question her right in this regard. The exception now made by defendant requires this court, in giving force and effect' to this delegation of authority by the state of North Carolina, to adopt an essentially different method. It seeks to have the appraisement made by a jury, not necessarily freeholders, and drawn from the body of the district, and not necessarily residents in any county through which the right of way passes. May it not be said that, the statute of North Carolina having thus prescribed in full the method in which a telegraph company can exercise the right of eminent domain, its directions must be strictly pursued, else the proceedings will not be *159 within the statute or under the statute. As was said in East Tenn., Va. & Ga. R. R. Co. v. So. Tel. Co., 112 U. S. 310, 5 Sup. Ct. 169, 28 L. Ed. 746—a similar case:
“This is a proceeding under the statute of Alabama fo ascertain the amount of compensation to be paid the railroad company for the appropriation of its property to the uses of a telegraph company. That is the single question to be settled. The remedy is statutory only, and every court which takes jurisdiction of its enforcement is limited in its powers by the statute, and under which alone it can act.”
The plaintiff began its proceedings in the state court under the state statute. The defendant sought and obtained the removal of the case into this court despite the opposition of the plaintiff. Must the court go on, and administer the state statute according to its terms, or must it employ its own methods ? Can it submit the assessment of damages to commissioners, as required by the state statute, or must this question go to a jury?
It must always be kept in mind that this is a case removed from the state court. In Mineral, etc., R. Co. v. Detroit, etc., Copper Co. (C. C.) 25 Fed. 518, we find a motion to remand a case for condemnation of land removed from a state court, accompanied by a motion for the appointment of three commissioners, as provided in the state statute. The motion to remand was refused, and the case was ordered to proceed in the manner provided in the state statute. In Colorado Midland R. Co. v. Jones (C. C.) 29 Fed. 193, it was held that proceedings for condemnation are removable even although a specific mode of fixing compensation is provided—either a commission of three persons, or, on application of the landowner, a jury of six persons. Such special provisions would not defeat the removal. The same judge who decided this case (Brewer, J.) decided in Kansas City v. Interstate Lumber Co. (C. C.) 37 Fed. 3, that was a motion to remand a proceeding for condemnation. The motion was refused. The cause was retained, and leave was given to plaintiff to apply for the appointment of commissioners, as provided in the state statute. Elliott v. Shuler (C. C.) 50 Fed. 457, was a motion to remand a case removed from the state court. It was not a proceeding for condemnation, but a proceeding to enforce a new remedy and a new right given by a state statute. The motion to remand was refused, the court saying:
“The removal of this ease does not divest the plaintiff of any substantial right vested in him by the state law, or deprive him of the benefit of the special proceedings by which he sought to enforce them in the state court in the manner and form provided by the state statute. * * * On the removal of the case the entire jurisdiction of the superior court was transferred to this court, which can now proceed to administer the state law, and •ascertain and adjust the legal rights of the parties as fully and completely as could have been done in the state court of original jurisdiction.”
On this same line is Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624:
“This principle may be laid down as axiomatic in our national jurisprudence. A party forfeits nothing by going into a federal tribunal. Jurisdiction having attached, his case is tried there upon the same principle, and its determination is governed by the same consideration, as if it had been '.brought in the proper state tribunal of the same locality.”
*160 In Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447, it is decided that “a party does not lose any right of appropriate remedy of which he might have availed himself in the state court of the same locality.” A fortiori, he is entitled to the same protection if he had not voluntarily gone into the federal court, and had been carried there against .his will. In Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804, the complainant, under an act of the state of Mississippi under the authority of a state statute, being an unsecured creditor, filed a bill to set aside certain deeds as fraudulent and void. The case was removed by the defendant into the federal court. In that court defendant relied upon Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, setting up the rule of the federal court not to entertain such a bill until the complainant had established his debt by judgment, or had a lien. The Supreme Court sustained the objection. But, recognizing'the force of the rule which we have cited in the decision above, instead of dismissing the bill it remanded the cause to the state court, in which the complainant could enjoy the right secured to him by the state statute.
These proceedings prescribe the method for the acquisition and transfer of a title in real estate. . In the United States v. Crosby, 7 Cranch, 115, 3 L. Ed. 287, the court entertained no doubt on the subject, and were clearly of .the opinion that the title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situated. In Clark v. Graham, 6 Wheat. 577, 5 L. Ed. 334, the same well-known principle is emphatically stated. In McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300, it is stated: “It is an acknowledged principle of law that the title and
disposition of real property is exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title can pass from one person to another.” McGoon v. Scales, 9 Wall. 23, 19 L. Ed. 545, states the same principle. The Southern Railway became possessed of a right of way in North Carolina with full knowledge that under the law of that state it could be taken for the use of a telegraph company by proceedings to be conducted in a certain fixed method. The result of such proceedings would pass' the title. In order to do this effectually, the law of the state alone could prescribe the method by which it must be done. That mode is, among other things, an assessment of the amount to be paid by freeholders residents in a county through which the right of way passes. If such assessment be made by a jury selected without regard to their being freeholders or not, and without regard to their residence in the county through which the right of way passes, it would be in derogation of the statute. In United States v. Jones, 109 U. S. 519, 3 Sup. Ct. 350, 27 L. Ed. 1015, the court says this:
“The proceeding for the ascertainment of the value of the property and ■ consequent compensation to be made is mérely an inquisition to establish a’ particular fact as preliminary to the actual taking, that it may be prosecuted before commissioners or special boards or the courts, with or without the intervention of a jury, as the legislative power may designate. All that is required is that it shall be conducted in some fair and just manner, with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon.”
*161 In Kohl v. United States, 91 U. S. 375, 23 L. Ed. 449, after stating that the mode of ascertaining just compensation in condemnation proceedings might have been by a commission, or might have been referred expressly to the circuit court, and adding, “But this, we think, was not necessary,” the court says afterwards: “The right of eminent domain always was a right at common law. That it was not enforced through the agency of a jury is immaterial, for many civil as well as criminal proceedings at common law were without a jury.”
In Great Falls Manufacturing Co. v. Garland (C. C.) 25 Fed. 524, 525, Judge Morris, in the circuit court of Maryland, says:
“With regard to the claim that complainant is entitled to have his compensation assessed by a jury, it has been so often decided that this is not a constitutional requisite that it cannot be any longer regarded as an open question. In condemnations of private property for public use in the exercise of the right of eminent domain, neither by the provisions of the Constitution of the United States, guarantying the right of trial by jury in common-law cases, nor under the provisions forbidding a citizen being deprived of his property without due process of law, nor under similar provisions in the Constitutions of states, has it been held that a trial by jury is requisite.” Cooley, Const. Lim. 563.
In Mills Em. Dom., it is stated that at the time of the adoption of the federal Constitution it was the practice to assess condemnation damages by commissioners, arbitrators, or any other impartial tribunal.
The defendant relies upon several cases reported from the Supreme Court, in which proceedings for the condemnation of land had been removed from the state to the federal court. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, was a case in which proceedings for condemnation had been begun in a state court of Minnesota under a statute of that state. Commissioners were appointed as provided in the statute, and made an assessment. The state statute authorized an appeal from such assessment to the court. In this event the clerk entered the case on the docket, and thereupon the court was required to proceed and hear and determine such case in the same manner as other cases are heard and determined in that court. In that state issues of fact must be tried by a jury unless the jury be waived. At this stage of the case it was removed into the federal court, and the issue was submitted to a jury in that court. So the provisions of the state statute were followed. In Pacific R. R. Removal Cases, 115 U. S. 2, 5 Sup. Ct. 1113, 29 L. Ed. 319, the removal was effected under the same circumstances, under the same provisions of law, at the same stage, and with the same result as in Boom Co. v. Patterson. In Searl v. School District No. 2, supra, the point discussed was as to the right of removal. The case was begun in a state court of Colorado under a state statute. The statute provided for commissioners to assess. No exception was made as to this. The only notice taken of it is that it is only one of the modes in which compensation is to be determined. No further proceedings in the case were reported. Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449, was a proceeding instituted by the United States as a sovereign in its own court to condemn land for its use. The act making the appropriation- did not expressly authorize condemna *162 tion, or prescribe the mode in which compensation could be fixed. The only point decided was that the United States, as a sovereign, possessed the right of eminent domain. This case has been quoted fully supra. Chappell v. United States, 160 U. S. 513, 16 Sup. Ct. 397, 40 L. Ed. 510, upon which the defendant confidently relies, was an original case in the federal court for the district of Maryland. The proceedings in that case were under an act of Congress-, Act Aug. 1, 1888, 25 Stat. 357 [U. S. Comp. St. 1901, p. 2516] authorizing the Secretary of the Treasury, when, in his opinion, it is necessary or advantageous to the United States to acquire land for the purpose of a lighthouse by condemnation under the judicial process in a court of the United States in the district where the land is situated. This act required that the practice, pleadings, form, and mode of procedure of the state courts where the land is situated be followed- as near as may be in conducting such condemnation. The statute of Maryland provided for condemnation of land in the courts of Maryland for the use of the United States, and provided that, if the petition for condemnation be allowed, compensation to the owner be fixed by a jury summoned under the order of court by the sheriff. Twenty persons are to be summoned. P'rom this number each party strikes out 4, and the remaining 12 fix the compensation. This is returned to the court, which passes on it, and either approves it or orders a new appraisal by another jury. In this Case of Chappell the Circuit Court of the United States, in conducting its own proceedings, ordered such a jury to be impaneled in precisely the same mode as prescribed by the state statute. Of course, the 20 men were not summoned by the sheriff, because the court could not instruct the sheriff to summon a jury, and made use of its own marshal. The 20 men having been summoned, 12 men were selected in the mode prescribed by the state statute, who found a verdict which the court confirmed, notwithstanding that the act of Congress allows only three challenges. Rev. St. § 819 [U. S, Comp. St. 1901, p. 629]. The award made by this jury was signed and sealed by the 12 jurors, and not by the foreman only, as is the ordinary practice. Chappell contended that the act of Congress was unconstitutional, and that, at all events, the finding of this jury was in the nature of an inquest, and that he was entitled to a trial before an ordinary jury. The court overruled both objections, and held that he had a trial by a jury in accordance with the practice of the United States courts as prescribed by statute. It is very clear that this case cannot be relied upon as deciding that in removal cases no condemnation can be had without a jury. In the first place, it was not a removal case, but a cause in the original jurisdiction. This point was never raised, discussed, or decided.
Counsel have asked that at this hearing only the legal question above discussed should be decided.