CITY OF TOCCOA v. MARCHBANKS.

(District Court, N. D. Georgia.   December 9, 1919.)

No. 135.

REMOVAL OF CAUSES ⊂⟶4, 79(1)—"SUIT"; CONDEMNATION PROCEEDING.

    A condemnation proceeding, under Civ. Code Ga. 1910, § 5206 et seq., by serving notice, selection of assessors by the parties, and filing of their award after hearing with the clerk of the superior court, from which award an appeal may be entered in writing within 10 days for trial before a jury in such court, *held* to become a "suit," within the removal statute (Judicial Code, § 28; Comp. St. § 1010), on the filing of the award in the court, and the time for filing petition for removal *held* limited to the 10 days allowed for entering appeal.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit.]

At Law.   Action by the City of Toccoa against J. D. Marchbanks. On motion to remand to state court.   Motion granted.

Fermor Barrett, of Toccoa, Ga., and W. A. Charters, of Gainesville, Ga., for plaintiff.

J. C. Edwards, of Clarkesville, Ga., and S. C. Upson, of Athens, Ga., for defendant.

SIBLEY, District Judge.   By an act passed in 1894 (Code Ga. 1910, § 5206 and following), all corporations or persons authorized to take or condemn private property for public purposes are required to proceed as follows:

Failing to agree on compensation, a notice directed to the owner or owners of the property to be condemned, describing the property or franchises and the amount of interest to be condemned, fixing a time of hearing, giving the name of an assessor selected by condemnor, and requesting the owner to select an assessor, is to be served by the sheriff in person, 15 days before the date fixed for the hearing. Guardians ad litem may be appointed by the clerk of the superior court or ordinary for persons under disability.   If the owner fails to name an assessor, the ordinary, or, if he is disqualified, the clerk of the superior court, selects one.   The two assessors agree upon a third, but, on failure after five days to agree, the judge of the superior court selects the third.   The three assessors have power to fix and alter the time of hearing, issue subpœnas, and compel attendance of witnesses, as in the superior court, are to be sworn to do "exact justice between the parties according to law," are to hear the evidence produced by either party, who may appear in person or by attorney, are to assess the value of the property taken, consequential damages to other property and consequential benefits, and render an award in a prescribed form as to each item, directing that the condemnor shall pay the condemnee the difference between the damage and the benefit.   The award is filed within 10 days, and recorded in the office of the clerk of the superior court of the county where the property is situated, and either party, within 10 days, may—

---

⊂⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"enter in writing an appeal from the award to the superior court of the county where the award is filed. And at the term succeeding the filing of the appeal it shall be the duty of the judge to cause an issue to be made and tried by a jury as to the value of the property condemned or the amount of damage done, with the same right to move for a new trial and file a bill of exceptions as in other cases at common law."

The appeal does not delay the work of the condemnor, if he pay the amount of the award to the owner or into court for him. The payment, or acceptance thereof, does not prevent either party from prosecuting an appeal. If no appeal is entered within 10 days from the filing of the award, and payment is not made, the clerk of the superior court—

"shall issue execution upon such award or judgment, which may be levied upon any property of the corporation or person condemning."

In all cases the clerk shall enter the notice and award thereon upon the minutes of the court, and the condemnor shall pay the costs as provided by law in civil cases in the superior court.

Under this statute, the city of Toccoa notified Marchbanks, a citizen of another state, of a purpose to condemn for a public waterworks 17 acres of described land, naming July 3, 1917, as the date of hearing. The second assessor was named by Marchbanks, and a third named by the judge of the superior court on October 8, 1917. The assessors being sworn, a hearing was fixed by agreement of parties for October 22, 1917, and Marchbanks, on that date, filed before the assessors a pleading setting up at length his contention for damages in an amount of $26,000. The assessors made a net award of $255, October 29, 1917, which was duly filed in the superior court of Stephens county. On October 31, 1917, Marchbanks appealed from the award.

The next term of the superior court should have been held in February, 1918, but was not held. A special term was held in May, 1918. At said term, on May 6, 1918, a petition and bond for removal were filed in said case, and the record in the cause was filed in the District Court of the United States on October 3, 1918. A motion to remand was filed by the city of Toccoa at the next term, on November 4, 1918, upon the general ground that the District Court was without jurisdiction in the premises.

No hearing was had thereon until November 7, 1919, when an amendment was allowed, contending that the removal was too late, in that Marchbanks had pleaded before the assessors, taken part in the contest before them, accepted payment of the award, and suffered a term of the superior court to elapse before attempting to remove the case, and the removal was too late.

The matter seems of first impression in Georgia, and as the order to be granted is final, it is thought proper to state the reasons for it.

The elements of federal jurisdiction are conceded. The contention is as to when this proceeding became "a suit of a civil nature," within the meaning of Judicial Code, § 28 (Act March 3, 1911, c. 231, 36 Stat. 1094 [Comp. St. § 1010]), and at what time "the defendant is required by the laws of the state or the rule of the state court in

which such suit is brought to answer or plead to the declaration or complaint of the plaintiff," under Judicial Code, § 29 (section 1011).

In the many decisions of the federal courts upon the statutes of other states, the matter seems in some perplexity and doubt. The case must be decided upon a proper interpretation of the Georgia statute. In Weston v. City of Charleston, 2 Pet. 463, 7 L. Ed. 481, Chief Justice Marshall said:

"The term 'suit' is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

Regarding condemnation proceedings, in Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449, the Court said:

"The right of eminent domain always was a right at common law. * * * That it was not enforced through the agency of a jury is immaterial; for many civil as well as criminal proceedings at common law were without a jury. It is difficult, then, to see why a proceeding to take land by virtue of the government's eminent domain, and determining the compensation to be made for it, is not, within the meaning of the statute, a suit at common law, when initiated in a court. It is an attempt to enforce a legal right."

In this case the United States was proceeding in a Circuit Court of the United States. If the state itself, by a direct act, were undertaking to assert the right of eminent domain, the Eleventh Amendment of the Constitution would have to be considered. Even where the right of eminent domain was asserted through a private corporation, Mr. Justice Brewer, then Circuit Judge, in Colorado Midland Ry. Co. v. Jones et al. (C. C.) 29 Fed. 193, thought it inappropriate for the federal courts to interfere unless the sole question to be determined was the amount of the compensation to be paid. It must, however, be taken as settled by the decision in Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, that when the right to take has been conferred upon conditions stated in statutes, that the construction and application of the statutes is a judicial mater, a controversy regarding which may be removed to the federal courts, although the propriety of the taking, as well as the compensation, is to be determined. This was recognized by the judges dissenting in that case, in Mason City Railroad Co. v. Boynton, 204 U. S. at page 578, 27 Sup. Ct. 321, 51 L. Ed. 629.

The question remains, however, as to when the procedure authorized by the state becomes a suit, that is, a judicial controversy before a court, and that is the point on which the decisions seem at variance. In Mississippi & Rum River Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, the proceeding before the appraisers, though made on notice, was said to be "in the nature of an inquest to ascertain value, and not a suit at law in the ordinary sense," and the right of removal after appeal from it was upheld. So in Pacific Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, the initial procedure before a mayor and a jury was held to be similar, and that a removal on appeal was not too late. In Searl v. School District, 124 U. S. 197, 8 Sup.

Ct. 460, 31 L. Ed. 415, the proceeding was initiated by a petition in court, naming the landowners, who were served with summons, and then freeholders were appointed to assess. It was there held:

"The fact that the Colorado statute provides for the ascertainment of damages by a commission of three freeholders, unless at the hearing the defendant shall demand a jury, does not make the proceeding from its commencement any the less a suit at law within the meaning of the Constitution and acts of Congress and the previous decisions of this court. The appointment of the commissioners is not, as in the case of Boom Co. v. Patterson and the Pacific Railroad Removal Cases, a step taken by the party seeking to make the appropriation ex parte and antecedent to the actual commencement of the adversary proceeding inter partes, which constitutes a suit in which the controversy takes on the form of a judicial proceeding. Because under the Colorado law the appointment of the commission is a step in the suit after the filing of the petition and the service of summons upon the defendant, it is an adversary judicial proceeding from the beginning. The appointment of commissioners to ascertain the compensation is only one of the modes by which it is to be determined. The proceeding is therefore a suit at law from the time of the filing of the petition and the service of process upon the defendant."

The case of Madisonville Traction Co., supra, involved a similar procedure, save that the commissioners were appointed ex parte and the owners subsequently summoned to show cause why their award should not be confirmed by the court. The court again held the proceeding a judicial proceeding from the beginning, and removable prior to the appeal.

There would seem no doubt that, where the appraisers are appointed and act without notice to the condemnee, and particularly when their action covers, not alone a special piece of property, but all property involved in a proposed improvement, that their procedure should be considered "a mere inquest," such as is a coroner's inquest or the presentment of a grand jury, which bind no one. It would seem equally clear that, where a petition is filed in a permanent court, contemplating service upon an adversary party, and such service is actually made, the procedure after such service is in its nature judicial, and that a suit is pending in a court.

The Georgia statute is intermediate, in that the appraisers are appointed on notice and proceed only after notice; but they are not appointed by a permanent court, and are apparently under the direct control of no permanent court until they make their award. Notwithstanding the casual action of the ordinary, or judge, or clerk of the superior court, in their organization, they cannot be said to be a part of either court, for they are under the control of neither. It is doubtful whether the superior court could even enforce the filing of their award, save by a formal mandamus.

The assessors are to determine only the question of compensation, and an appeal from their finding is so limited. Any question of the propriety of the taking must be raised in Georgia by petition in equity for an injunction. Atlanta Terra Cotta Co. v. Georgia Electric Co., 132 Ga. 537, 64 S. E. 563. But they alone can fix the compensation. It would seem that, being sworn to decide according to law, deriving their powers, not from the consent of the parties, but from the law,

having power to compel the attendance of witnesses, to hear evidence, and to make a judgment, which will fix the rights of the parties, if not appealed from, there is present every element of a court and a suit therein. There being no constitutional requirement in Georgia to the contrary, their award might be made. final (Savannah, Florida & Western Railway Co. v. Postal Telegraph-Cable Co. et al., 112 Ga. 941, 38 S. E. 353), and at one time was final (Oliver v. Union Point & White Plains Railroad Co., 83 Ga. 257, 9 S. E. 1086).

If this were still the case, I should have no hesitation in holding them to be a court, though temporary in character, and that the proceeding before them might be removed to the District Court as soon as they were organized by the selection of a majority of their members; the federal judiciary then taking the place of the state judiciary in all that might be required of the latter. Under similar circumstances this conclusion was reached in the case of Mineral Range R. Co. v. Detroit Copper Co. (C. C.) 25 Fed. 515, cited with approval in the Searl Case, above. Otherwise the naked question of compensation, confessedly a controversy which is removable, would, by the forms and procedure adopted by a state for its adjudication, be withdrawn from the federal judicial power. As to the view the state court has taken of the status of the appraisers as a court, see Hutchinson v. Copeland et al., 146 Ga. 357, 91 S. E. 206, Charleston & Western Carolina Ry. Co. v. Hughes, 105 Ga. 12, 30 S. E. 972, 70 Am. St. Rep. 17, and N., C. & St. L. Ry. Co. v. Western Union Tel. Co., 142 Ga. 525, 83 S. E. 123.

There are, however, practical difficulties in applying the removal prcedure at this stage. The appraisers would doubtless have to be treated both as the court to which the petition and bond for removal are to be presented and also as the clerk who would transmit the record, since there is no record in the hands of any one else. Moreover, the actual practical benefit to be derived from a removal would seem to be confined to the selection of the third assessor by the District Court judge, instead of by the judge of the superior court.

Taking, however, the Georgia procedure as it stands, involving a full right of appeal and an ultimate lodgment of the entire proceedings in a permanent, unmistakable court, I would be unwilling to hold with the contention of the condemnor that a removal, even if it may be sought before the appraisers, must be sought there, or the right lost. Viewing the procedure as a whole, it would seem a fair interpretation of it to regard the matter as in fieri, or preparatory, until the award is made up and filed, with the notice, with the clerk of the superior court. The matter, viewed in a broad light, then stands in a court of record with the notice and the award together indicating a definite demand for definite property for a specific purpose, to be taken at a fixed price—a demand which the condemnee, if he does not wish to acquiesce in it, must, as in other cases in court, take measures to defend himself against. The case at this point is unmistakably a suit of a civil nature, pending in a permanent court, after due notice to the defendant therein.

The fact that in this case the condemnee filed a pleading before the assessors may be treated as immaterial. The statute required no such thing. If they had been the final tribunal, although no written answer were required, of course removal would have to be sought at the time the condemnee was compelled to appear for trial and there plead orally; but I think it may be fairly said that "the statute of the state (there being no rule of court involved) required" nothing of the defendant until, the award being filed, it declared that he must, within 10 days therefrom, in order to escape its becoming a final judgment against him, fixing the amount he might recover, "make, in writing, his appeal therefrom." This appeal is the only thing required by the condemnation statute, from beginning to end, for the condemnee to do. The issue that is to be made up for trial by a jury the statute does not require to be made up by the defendant, but by the judge, and this cannot serve as the point of time at which removal is to be sought, as contended by Marchbanks. Practically it would be quite unreasonable to permit the condemnee to wait, not only until the appraisers had heard the case, made their award, filed it, and appeal had been entered, but until the case was actually called for trial before a jury, with parties and witnesses present, to make his demand for removal. Promptness is certainly aimed at in the seeking of this remedy.

Considering the filing of the appeal to be the only plea or answer required by the state statute of the condemnee, I take the time fixed for that as the time at which removal must be sought, under Judicial Code, § 29, and that the right of removal expires with the 10 days after the filing of the award. Whether it be possible to treat the Georgia procedure as judicial from its inception, and whether the removal may be sought at any time prior to the filing of the award, should the condemnee consider it important to seek it at that time, need not be, and is not now, decided. But see Kaw Valley v. Metropolitan Water Co., 186 Fed. 315, 108 C. C. A. 393; Des Moines Water Co. v. City of Des Moines, 206 Fed. 657, 124 C. C. A. 445. It is held, however, that the removal must be sought during the period allowed for the filing of the appeal. This being true, the removal in this case was sought too late, and the case should be remanded. Compare Martin's Adm'r v. B. & O. R. R. Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311; Heller v. Ilwaco Mill & Lumber Co. (C. C.) 178 Fed. 111; First Nat. Bank v. Appleyard & Co. (C. C.) 138 Fed. 939; Head v. Selleck (C. C.) 110 Fed. 786.

Marchbanks, however, contends that this ground of the motion to remand is taken too late, and the right to remand, therefore, had been waived by the city of Toccoa. A waiver implies a voluntary surrender of a right, or at least the doing, or the omission, of some act, of the taking of some position, that clearly indicates a purpose to surrender the right, or the acceptance of some inconsistent benefit that would estop. In this case the city of Toccoa has certainly not intended to waive any right of remand, but has from the beginning insisted that the cause should go back to the state court. The mere

finding of additional grounds therefor is in line with their consistent contention, and shows no waiver of the right to remand, nor an estoppel to assert it.

The case will therefore be remanded to the superior court of Stephens county.